**THE UNITED STATES DISTRICT**
**COURT SOUTHERN DISTRICT OF**
**TEXAS HOUSTON DIVISION**

| | |
|---|---|
| BARBARA LATHAM, Individually | § |
| And as Durable / Medical Power of | § |
| Attorney and Health Care Surrogate for | § |
| MURIEL MINTZ, ESTELLE NELSON | § |
| Seeking appointment under F.R.C.P. 17c | § |
| Alternatively & MURIEL MINTZ | § |
| | § |
|   VS. | § |
| | § No. _____ |
| | § |
| JUDGE MIKE WOOD, Individually and | § |
| Official Capacity as Statutory Probate Judge | § |
| Harris County, Texas, MICHELE GOLDBERG | § |
| Individually & Officially, HARRIS COUNTY | § |
| TERESA PITRE, Individually & Officially, | § |
| DONALD MINTZ & HOUSTON HOSPICE | § |
| STACY KELLY | § |

**ORIGINAL COMPLAINT WITH EMERGENCY APPLICATION**
**FOR TEMPORARY RESTRAINING ORDER, DECLARATORY**
**RELIEF, PRELIMIARY & PERMANENT INJUNCTION**

1.      **THIS CASE IS A DIRE EMERGENCY IN WHICH MURIEL MINTZ'S LIFE HANGS BY A THREAD FORCED TO DIE BY STARVATION AND DANGEROUS DRUGS, AS APPROPRIATE MEDICAL TREATMENT IS WITHHELD AND HER REGISTERED NURSE DAUGHTERS ARE BANNED FROM ACCESS TO MURIEL MINTZ OR ANY INFORMATION OR RECORDS CONCERNING WHY SHE IS BEING FORCED TO DIE 3 WEEKS AFTER THE PURPORTED TEMPORARY GUARDIAN ASSUMED HER CARE—IT IS A LIFE AND DEATH MATTER!**

2.      BARBARA LATHAM, Individually and as Medical/Durable Power of Attorney for MURIEL L. MINTZ, guardian in the event of need, health care surrogate and attorney in fact for MURIEL L. MINTZ, ESTELLE NELSON, AND MURIEL MINTZ, individually respectfully

file this COMPLAINT for deprivations of privileges, immunities and fundamental human rights guaranteed by the United States Constitution, including the right to life, liberty and property which shall not be taken absent due process and equal protection of law (14th Amendment), 42 U.S.C. s 1983, First amendment right to life, freedom of speech and association with familiar rights not infringed by any government entity or person "acting under color of State law", the Fourth Amendment guarantee against unreasonable search or seizure, the Sixth Amendment right to *effective assistance of counsel*, Seventh Amendment right to trial by jury prior to any deprivation, Eighth Amendment guarantee against cruel and unusual punishment, 42 U.S.C. 12101 et seq; the Americans with Disabilities Act of 1990, and ADAAA (2008 and 2016 regulations) and Section 504 of the Rehabilitation Act of 1990 ("Section 504") of the Rehabilitation Act of 1973, 29 USC s 794.

3. DEFENDANTS unlawfully seized the person and property of MURIEL MINTZ AND BARBARA LATHAM in violation of 42 U.S.C. 1983 and the Fourth Amendment. MURIEL MINTZ was ORDERED by HON. MIKE WOODS to be totally incapacitated as he stripped her of ALL RIGHTS citizens of the United States is guaranteed, including inalienable rights that cannot be taken away by a State or local government official acting "under color of State law" without it being a serious criminal act, violating 18 U.S.C s 242, 241.

4. **The most EGREGIOUS aspect of her deprivation of rights lies in the FACT that MURIEL MINTZ was never given notice or an opportunity to be heard, simple due process, much less meaningful access to the Courts with a meaningful opportunity to participate before they are deprived of liberty, property or life**. SHE WAS NEVER PERSONALLY SERVED BEFORE HER ILLEGAL GUARDIAN SEIZED OVER $100,000 of her assets and everything she owned after which time she put her on hospice three weeks after

assuming her care, leading to the question: *HOW COULD A GUARDIAN PLACE A WARD ON HOSPICE TO DIE THREE WEEKS AFTER ASSUMING HER CARE WHEN SHE WAS NOT SICK WHEN SHE WAS DROPPED AT MICHELE GOLDBERG'S OFFICE??*

5.      This case brings up many disturbing questions and the answer appears virtually indisputable. The court, in usual form, failed to observe almost any provision of the Texas Estates Code or Constitution and federal laws before seizing MURIAL, her estate and taking away every right she conceivably had, at which time the purported guardian (serving by virtue of a void court order) wasted no time to put her on hospice. Why?

6.      **The answer is disturbingly beyond the bounds of decency and humanity in treating the elderly disabled mother as mere chattel to be disposed of in favor of taking her estate and a trust which has no relevance to her because the funds were transferred into a family trust, MURIEL MINTZ FAMILY TRUST, benefitting only the ward's three children and over which she retained no control or right.**

## I.      <u>PARTIES</u>

### a.  <u>PLAINTIFFS</u>

7.      MURIEL MINTZ is a citizen of the United States and a resident of BRAZORIA COUNTY, and has resided at 1022 Northwick Drive, Pearland, Texas 77584. She may be served with citation and process as Houston Hospice, 1905 Holcomb Blvd, Houston Texas, 77030.

8.      BARBARA LATHAM is a citizen of the United States and was, at all times relevant to this complaint, a resident of BRAZORIA COUNTY, TEXAS. She may be served through attorney, CANDICE SCHWAGER, 1417 Ramada Drive, Houston, Texas 77062, Tel: 832.315.8489, Fax: 713.456.2453, <u>candiceschwager@icloud.com</u>.

9.      ESTELLE NELSON is a citizen of the United States and was at all times a resident of Harris County, Texas during relevant time periods. She may be served through attorney, CANDICE SCHWAGER, 1417 Ramada Drive, Houston, Texas 77062, Tel: 832.315.8489, Fax: 713.456.2453, candiceschwager@icloud.com.

## b.     DEFENDANTS

10.     MICHELLE GOLDBERG is a resident of Harris County, Texas and may be served with process at 6750 W. Loop S. Suite 615, Bellaire, Texas 77401.

11.     STACY KELLY is a citizen of the United States and resident of Harris County, Texas. She may be served with process at 6363 Woodway, Suite 300, Houston, Texas 77057.

12.     TERESA PITRE is a citizen of the United States and resident of Harris County, Texas. She may be served with process at 12808 W. Airport STE 255C, Sugarland, Texas 77478.

13.     HON. JUDGE MIKE WOOD is a citizen of the United States and resident of Harris County, Texas. He may be served with process at 201 Caroline Street, Suite 680, Houston, Texas 77002, Statutory Probate Court No. 2.

14.     HOUSTON HOSPICE is located at 1950 HOLCOMB BLVD, HOUSTON, TEXAS. 77030 and may be served with process through registered agent, Christine V. Blackmon. MURIEL is currently being confined and starved at this facility.

15.     DONALD MINTZ is a resident of HARRIS COUNTY TEXAS and may be served with process at 3519 Yupon Street, Houston Texas 77006.

## II.     JURISDICTION AND VENUE

16.      This action arises under the United States Constitution, particularly the 1ST, 4TH, 5TH, 6TH, 7TH, 8TH AND 14TH Amendments, and under federal law, specifically, Title 42 U.S.C. §

1983, and § 2000cc et seq. This court has jurisdiction:

17.     Plaintiffs' claims arising under the United States Constitution and federal law pursuant to 28 U.S.C. § 1331, 29 U.S.C. §794, 42 U.S.C. § 1983, and 42 U.S.C. §12101 *et seq*.; Over Plaintiffs' prayer for preliminary and permanent injunctive relief and damages under FEDERAL RULE 65(a);

### Rule 65. Injunctions and Restraining Orders

**(a) Preliminary Injunction.**

(1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

(2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

**(b) Temporary Restraining Order.**

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days— that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does

not, the court must dissolve the order.

(4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) *Contents.* Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) Other Laws Not Modified. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. §2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. §2284, which relates to actions that must be heard and decided by a three-judge district court.

18.     Declaratory relief under Title 28 U.S.C. § 2201;

19.     ATTORNEYS FEES pursuant to Title 42 U.S.C. § 1988.

20.     Venue is proper under 28 U.S.C. § 1391 in the SOUTHERN DISTRICT OF TEXAS

because this claim arose therein. Each and all of the acts alleged herein were done by the

Defendants under the color and pretense of state law, statutes, ordinances, regulations, or customs

### III.   **RELATED CASES OF PATTERN/PRACTICE**

*21.*     The Appeals court of Texas has repeatedly mandamused JUDGE MIKE WOOD for decisions made without REGARD TO ANY LAW WHATSOEVER, WOOD has been repeatedly sued for ACTING IN THE COMPLETE ABSENCE OF ALL JURISDICTION. [1]

22.     PLAINTIFF gives notice of *Cause No. 4:16: 03215; Sherry Lynn Johnston; in the Southern District of Texas, Houston Division*, Honorable Lee Rosenthal presiding; as a related case, eerily similar to this case,

23.     **The undersigned represented the PLAINTIFF in SHERRY JOHNSTON VS. DAVID DEXEL; and watched MS. MILLS be starved and drugged to death, as DEFENDANTS are conspiring to do in this case.**

24.     The same pattern, practice and methods of unlawful conduct were used in that case to end the life of WILLIE JO MILLS, for which the Honorable JUDGE LEE ROSENTHAL ruled that claims can proceed against the JUDGE'S BOND AND GUARDIANS for wrongful death of WILLIE JO MILLS, deceased, starved and drugged to death to 80 lbs. at death with severe contractures in violation of Section 504); *Cause No. 4:16: 03215; in the Southern District of*

---

[1] *See attached 3ʳᵈ amended petition against HON.JUDGE WOOD, HON. JUDGE BUTTS, HON JUDGE HERMAN in Carolyn James vs. Stephen Calkins; Cause No. 01910; before the HONORABLE JUDGE DAVID HITTER. See Tricks and Traps Article authorized by JUDGE MIKE WOOD AND KEITH MORRIS, STACY KELLY'S law firm, with such firm representing a party in the wrongful death case against JUDGE CHRISTINE BUTTS, HARRIS COUNTY, and court appointed guardians for the wrongful death of WILLIE JO MILLS, DECEASED, before the Honorable Lee Rosenthal, Southern District of Texas.*

*Texas, Houston Division.*  The undersigned was personally threatened and forced out of the guardianship case by lawyers acting in conspiracy with the DEFENDANTS to hasten her death and retaliate against JOHNSTON.

25.     Plaintiff gives notice of *Cause No. 4:12—00592; Candace Curtis vs. Anita Brunsting, et al,* Honorable Kenneth Hoyt; in which the Fifth Circuit ruled that the trust was in the jurisdiction of the federal court such that probate court could not snatch it back, at which time JASON OSTROM, the same law firm involved in this case and the wrongful death case of JOHNSTON VS. DEXEL, ET AL. OSTROM fraudulently conspired against his own client, CURTIS, entering a Rule 11 Agreement to move the case back to the probate court after the 5th Circuit ruled jurisdiction was in the FEDERAL DISTRICT COURT and the district Judge Hoyt entered a federal injunction against the DEFENDANTS under FRCP 65.

26.     PLAINTIFFS further ask this Honorable Judge to take JUDICIAL NOTICE of Texas Court of Appeals decision against HON. JUDGE MIKE WOOD; *In re Alpert; Cause No. 01:08: 00804;* in the 14th Court of Appeals, Houston Division (2008); as well as the following media articles demonstrating an abuse of power and utter disregard for human rights or the law in the following features dating back to 2006-2008:

27.     The Court held Judge Wood acted improperly in NOT FOLLOWING THE LAW and paying his prior law firm partners $2 million in fees when these fees should not have been paid;

28.     The Court is asked to take judicial notice of the following news articles, which show a pattern and practice of similar civil rights violations, utter disregard for the rule of law and the Americans with Disabilities Act; *See email from Schwager to Harris County probate judges 2015, outlining their responsibilities to the disabled under the ADA which fell on deaf ears;*

- *Judge Wood Slapped Again, Rick Casey Houston Chronicle (2008)*

- *Grave problems in Texas: Looting Assets of the Dead and Disabled; Lou Ann Anderson, Estate of Denial (2008)*

- *Houston Chronicle feature of Lise Olsen, 2007, Millionaire, 84, dies fleeing Harris County Probate Court (Judge Wood presiding).*

- *Houston Chronicle feature of Rick Casey, 2008, Judge Wood found in "error"*

29.     The following exhibits are attached to support this EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION FILED WITH THIS COMPLAINT UNDER EMERGENCY CONDITIONS:

- Designation of Guardian in the event of need 2006 by Muriel Mintz, disregarded with no hearing or evidence

- Bill of rights of wards (Jim Crow laws for the elderly and disabled) violated;

- MURIEL L MINTZ FAMILY TRUST and TRUST LAWSUIT to remove BARBARA LATHAM, a feat that cannot be accomplished by this court or DONALD MINTZ **even for cause UNTIL MURIEL IS DEATH, such that the clock is ticking for her death;**

- **Multiple returns of service demonstrating that Muriel was not personally served with process in this case such that WOOD never acquired jurisdiction over her or her property;**

- **One return that is abject fraud because it fraudulently avers that MURIEL was served with process in court when DONALD MINTZ'S lawyer admits in court transcripts that MURIEL was not present the day of this purported service and BARBARA swears that her mother was in the hospital the night before and was not there; It was executed to eliminate MINTZ'S problem serving her;**

- Return of Service demonstrating that TERESA PITRE was served with process on behalf of MURIEL MINTZ when no attorney could be appointed for MURIEL until she was served by law and service cannot be made on a proposed ward's attorney for guardianship applications;

- Return of service from Clarewood where she lived, unserved;

- Ambiguous void order granting temporary and permanent guardianship to MICHELE GOLDBERG removing ALL RIGHTS of MURIEL MINTZ stating she is "totally incapacitated" based on clear and convincing evidence which was never introduced into any record, with no expert witness, no  trial no notice, or due process; violating MURIEL'S right to attend and participate when the county's DR. POA concluded that she could attend and participate, leaving no basis for WOOD to summarily conclude her presence was not necessary;

- Medical and Durable powers of attorney granted BARBARA LATHAM;

- Appointment of LATHAM as agent for disposition of remains;

- DONALD MINTZ'S perjured affidavit attached to application for guardianship falsely representing the family trust to be MURIEL'S revocable trust;

- **Texas law on less restrictive alternatives, which were egregiously violated in derogation of Title II of the ADA;**

- Expert report of Dr. Edward Poa of the Menninger Clinic dated June 9, 2017;

- Plea in abatement and motion to transfer venue ignored by JUDGE WOOD, transcript of 12/12/17 provided;

- Motion to transfer venue of the trust action filed 11/27/17, three days after MICHELE GOLDBERG took possession of MURIEL, which was premature given MURIEL was not even sick and removal of a trustee requires that she be dead,

which seems to explain GOLDBERG'S abrupt news that she was going to hospice;

• Affidavit for TRO in support of this lawsuit by BARBARA LATHAM;

• Affidavit in Guardianship action of BARBARA LATHAM; supporting argument
that guardian had no standing to file show cause and threaten contempt or demand
personal banking documents of LATHAM or the TRUST because MURIEL was
not a beneficiary and her appointment was not even legal.

• Affidavit of Latham to support trust action motions

• December 21 Letter of Candice Schwager to Houston Hospice warning of lawsuit
and demanding hospice stop starving and dehydration MURIEL MINTZ because
she was not terminal and they engaged in stealth euthanasia;

• Order in Judge Lee Rosenthal's Court providing the guardian and judge were not
immune, permitting the wrongful death case to proceed against JUDGE
CHRISTINE BUTTS AND GINGER LOTT, among other DEFENDANTS; ADA
AND 1983 claims under review;

• 3rd Amended Complaint in Carolyn James vs. Richard Calkins case mentioned
herein to give notice of similar egregious acts taken by WOOD in the complete
absence of jurisdiction;

• Verification attached to motion to transfer venue to Brazoria County in trust action,
having mandatory venue, with motion to compel mandatory arbitration which
WOOD steamrolled;

• Transcript of 12/12/17 hearing granting void TRO in trust action because no
evidence was introduced of irreparable harm or anything that would show mere
risk, demonstrating WOOD refused to allow SCHWAGER, LATHAM'S counsel to
cross examine GOLDBERT OR MINTZ, the witnesses who made conclusory

defamatory statements but provided no evidence;

- Durable power of attorney granted to LATHAM by MINTZ in 2006 and 2016;

- Supreme Court decision in Cruzan vs. Mo. Dept. public health 497 US 291 (1990)

- Email communications from SCHWAGER to HARRIS COUNTY PROBATE JUDGES informing them of mandates of ADA and how they are all violating it in a pattern and practice of civil rights and ADA violations;

- Emails of GOLDBERG threatening ESTELLE NELSON AND/OR BARBARA LATHAM with trespass or terminating their visit based on fabricated stories designed to conceal criminal activity;

- Transcript of 10-31-17 demonstrating collusion of the attorneys with LATHAM'S prior counsel, likening her to a criminal;

- Transcript of 11-28-17 emergency motion for continuance due to ambush of show cause hearing and order to produce documents, all void;

- Transcript of 12-12-17 showing due process and equal protection violations and the JUDGE'S role in refusing to allow evidence in by not permitting SCHWAGER to ask relevant questions to the trust DONALD MINTZ introduced into evidence;

### IV.     FACTUAL BACKGROUND

30.     **MURIEL** is 93 years of age and has rarely been ill aside from mild congestive heart failure that has always been effectively managed by mediations, macular degeneration causing severe visual impairment bordering on blindness (low vision), occasional urinary tract infections, and a decade of thinning hair not due to any particular cause she is aware;

31.     **MURIEL** has three adult children: DONALD, ESTELLE AND BARBARA for whom she established an IRREVOCABLE LIVING TRUST as a gift to them in 2015, retaining assets to include her monthly person for living expenses;

32.    **MURIEL** always planned to live in assisted living or with BARBARA when that was no longer possible and openly agreed to share expenses if that transpired;

33.    **MURIEL** is very quiet, but has no significant history of impairment caused by dementia or Alzheimer's. When tested by Dr. Edward Poa of the Menninger Clinic, DR. POA utilized visual and auditory tests placing her at a severe disadvantage given her near blindness and labored hearing; These disabilities significantly distorted the results of DR. POA'S testing of MURIEL, with both ESTELLE AND BARBARA having little confidence that the test is remotely accurate as a representation of their mother's cognitive abilities;

34.    BARBARA LATHAM was designated as MURIEL'S DURABLE AND MEDICAL POWER OF ATTORNEY, HEALTHCARE SURROGATE, AND GUARDIAN IN THE EVENT OF NEED, as well as attorney in fact to handle remains and most all needs MURIEL envisioned could be required in the future—more than a decade ago; *See sworn affidavits of Barbara Latham in guardianship and trust case, to include three affidavits Barbara Latham submits under oath by penalty of perjury.*

35.    MURIEL appointed BARBARA LATHAM and left such appointments UNCHANGED until DONALD MINTZ overcame **MURIEL'S** resistance. See also 2016 corrections to name BARBARA LATHAM and correct the mistake.

36.    DONALD had long threatened to take her money and force her into a nursing home, which MURIEL was violently opposed to occurring; and appears to have put his plan to seize the trust and MURIEL'S assets in motion in 2015 via the formation of the MURIEL MINTZ FAMILY TRUST;

37.    DONALD hired JIM MULDER, high school friend, in 2015 to prepare the trust, designating himself and LATHAM co-trustees for beneficiaries, ESTELLE NELSON,

BARBARA LATHAM AND DONALD MINTZ.

38.     DONALD convinced MURIEL to put most of her assets in the trust as a gift for the three to access for care, maintenance, education and support (of any of the three according to needs) granting the TRUSTEE'S broad discretion to move funds to other banks, issue UNEQUAL distributions according to needs of the beneficiaries existing now,

**39.     DONALD MINTZ included several odd provisions in the trust that are virtually unheard of in trust law—to ensure liberal access to funds, no judicial oversight, and make it impossible for LATHAM AND/OR NELSON to remove him UNTIL MURIEL WAS DEAD.**

40.     MURIEL retained no control, right, title, or ownership to any assets funding the trust, and DONALD ensured that it was IRREVOCABLE to avoid it being busted by any court and prevent beneficiaries from even removing him for cause UNTIL MURIEL WAS DEAD, at which time the trust immediately ends and is split 1/3 to each child;

41.     Almost immediately after the trust was formed, DONALD MINTZ became enraged with co-trustee BARBARA LATHAM, for complying with her duty to inform ESTELLE NELSON that she was made a beneficiary of this trust and convey the extent of ESTELLE'S right to distributions; DONALD refused to inform ESTELLE which is a BREACH OF TRUST.

42.     DONALD MINTZ relinquished control of the trust in its entirety to BARBARA LATHAM not long after it was created, becoming estranged from both sisters in anger, possibly brought on by mental problems attendant to pituitary cancer treatment or otherwise;

43.     DONALD took one distribution of $14,000 and did not otherwise request any accounting, secure a successor trustee to fill the vacancy he left when he breached his duties

14

to the beneficiaries by abandoning the trust –yet not officially resigning, such that LATHAM remained confused as to whether she had the power to appoint a successor;

44.    By accepting the benefits, he accepted the terms even if those terms were part of a form trust, rather than chosen;

45.    As a result of his own bad decisions, DONALD apparently discovered the no-win scenario he found himself in, which is: (a) abandoning the trust possibly extinguished DONALD'S standing, which arguably deprives him of standing to sue for breach of trust period, (b) violating the trust by subjecting it to continuing jurisdiction of a court of improper venue when arbitration is mandatory or (c) suing to bust the trust forfeited his interest, rendering him to have pre-deceased MURIEL with his remaining share split pro rata between ESTELLE AND BARBARA;

46.    One of two things is true: (a) Either Donald is engaged in collusion for pre-mediated murder dating back to 2015 when he had this trust created or (b) Upon realizing that his actions have extinguished his interest in the trust, he concocted a scheme with unscrupulous lawyers known for gaming the system—and the scheme required DONALD to file guardianship of his mother and hasten her death because HE CANNOT REMOVE BARBARA LATHAM EVEN FOR CAUSE UNTIL MURIEL MINTZ IS DEAD, perTHE TRUST.

47.    DONALD filed for guardianship of his mother in March of 2017 to "bust" the trust, by seeking a third party guardian and perjuring himself as he took the knowingly fraudulent position that the trust was REVOCABLE and actually belongs to MURIEL'S estate.[2]

---

[2] In essence, his "tricky" lawyers "tricked" him into essentially swearing that he essentially took $150,000 from MURIEL'S estate to prevent the federal government from taking it by calling the trust IRREVOCABLE, but now concedes that the money does not belong to him?

48.     DONALD MINTZ failed to even get his mother served the entire duration of this void proceeding so the DEFENDANTS conspired to pretend MURIEL was actually in court and served, when that has never occurred and MURIEL was in the hospital the night before so neither her nor BARBARA were in court that day;

49.     Every return confirms the citation was not served on MURIEL MINTZ. DEFENDANTS understood that MURIEL had to be served, not the attorney the Judge already appointed beforehand, TERESA PITRE, an IRS and tax law expert seemingly chosen to determine monies owed to the IRS when MURIEL dies and the estate is distributed as well;

50.     DONALD MINTZ already chose his "fall guy" and created the scenario that he now finds so objectionable, even though no facet of BARBARA LATHAM'S actions as trustee will support a finding of breach; DONALD *filed the guardianship* seeking a third-party guardian to accuse BARBARA of fraudulent transfers, hoping the Court would bust the trust on the theory that it was never valid from the outset;

51.     DONALD became obsessed that BARBARA was spending the trust money on ESTELLE and HERSELF, fearing that if he did not act quickly, the trust would be gone entirely—a fear with no basis in fact;

52.     DONALD'S dilemma is BARBARA never intended to defraud anyone, nor did she believe there was anything wrong with the agreement or MURIEL making a lifetime gift while competent to do so, reserving substantial assets to live on—because BARBARA HAD NO INTENTION of allowing her mother to reside in a Medicaid nursing home—ever. BARBARA AND MURIEL agreed long before that MURIEL would live with BARBARA when the time came that she was not able to reside alone;

53.     DONALD'S PLAN was quite the opposite. DONALD made no secret for the last 20

years of his intent to take control of MURIEL AND ALL OF HER MONEY and place her in a NURSING HOME!

**54.** DONALD proceeded with the only means he believed had a chance of giving him control of MURIEL OR BARBARA'S assets and the TRUST, GUARDIANSHIP but even GUARDIANSHIP DID NOT FIX HIS SITUATION.

**55.** **THE SMOKING GUN proving MURIEL being placed on hospice to die a mere three weeks after MICHELE GOLDBERG had custody of her that PROVES INTENT TO KILL IS THE TRUST CLAUSE ON THE POWER TO REMOVE A TRUSTEE, which says that no trustee can be removed—even for cause UNTIL MURIAL IS DEAD. DONALD filed a trust lawsuit to remove BARBARA November 27, three days after MICHELE had total control of MURIAL and the power to conceal it all; MURIEL WASN'T SICK but is at the verge of death three weeks later;**

**56.** **Why would DONALD file a lawsuit to remove BARBARA before his mother was even ill if the lawsuit could not be filed until she was dead? What did he learn in those three days that LATHAM did not see in 8 months?**

57. For the better part of 7 months neither DONALD nor MICHELE said anything about MURIEL'S care, though they engaged in a campaign of slander and harassment with law enforcement and Adult Protective services to wear BARBARA down and retaliate to the point she would just give up, which is exactly what happened;

58. In an effort to conceal her malfeasance, gross neglect and collusion with DONALD, MICHELE accused BARBARA of not caring for MURIEL sufficiently stating that MURIEL was malnourished when if that were even remotely true, MICHELE is likely to blame for the incredible amount of distress, stress and terror wrought upon BARBARA AND MURIEL,

with constant threats to take MURIEL;

59.     DEFENDANTS' conspiracy is clear in the VOID order appointing MICHELE GOLDBERG as temporary and then permanent guardian in the same contradictory ORDER, that states it is temporary before concluding in the last clause that it is permanent after all;

60.     Without any evidence, expert testimony satisfying Rule 702 of the Rules of Evidence, no opportunity to receive notice be heard, meaningfully participate as mandated by the ADA, but denied by the Judge who concluded her presence was unnecessary and issued a void order that failed to identify the supports, services considered, "clear and convincing evidence" he refers to in determining she is totally incapacitated; and using what appears to be a form order that the lawyers didn't want the burden of even specifically identifying the rights granted to the guardian, so the Judge wrote MURIEL was deprived of 'ALL RIGHTS." INALIENABLE?

61.     As soon as MICHELE GOLDBERT was appointed in September, DONALD and his two adult children became increasingly hostile and demanding insisting that BARBARA drive to MICHELE'S office 2-3 times per week and wait two hours at a time for them to visit—letting her know that she was not invited. The visits appeared geared towards harassment and making a record of BARBARA'S failure to comply with every demand

62.     MURIEL L MINTZ has never been declared incapacitated by a standard that satisfies Texas law, such that she remains presumed competent. Nevertheless, BARBARA LATHAM has been entrusted to manage her mother's assets and estate since 2006 when MURIEL named BARBARA as DURABLE AND MEDICAL POWER OF ATTORNEY, GUARDIAN IN THE EVENT OF NEED, Healthcare surrogate, and attorney in fact for all purposes

63.     DONALD'S application for guardianship included a perjured affidavit falsely stating that the MURIEL MINTZ FAMILY TRUST (benefitting her adult children and naming BARBARA AND DONALD as Trustees irrevocably) was revocable and part of her estate in a clear attempt to gain control of the TRUST and her ESTATE by deception and a court's order giving him total control of his mother—if he prevailed.

64.     When BARBARA refused to willingly provide a stranger with private banking documents she had no standing, jurisdiction or right to demand, GOLDBERG wrote a 73 page show cause order, threatening her with jail for contempt if she held back;

65.     MICHELLE GOLDBERG had no standing to investigate LATHAM'S personal bank assets, individual retirement accounts, or family trust account even if her guardianship appointment was valid because MURIEL MINTZ was not a beneficiary of the MURIEL MINTZ FAMILY TRUST and retained no interest, control or rights to the assets in that IRREVOCABLE TRUST—a fact that DONALD MINTZ knew because he is the person who set up the trust and chose the form and clauses included therein.

66.     Judge Wood issued a second ORDER TO PRODUCE DOCUMENTS which he had no jurisdiction to ORDER and GOLDBERG had no standing, jurisdiction or right to demand; *her ½ million-dollar bond, as well as the court appointed guardian, denying both immunity.*

67.     Much like DONALD, GOLDBERG showed no interest in the person of MURIEL, which is quite likely the reason MURIEL was sentenced to death by her in a mere three weeks.[3]

---

1.          [3] *See 3 Affidavits of Barbara Latham, Applications for Guardianship of Donald Mintz wherein he perjures himself TWO DIFFERENT TIMES WITH TWO DIFFERENT LAWYERS, and falsely states the trust is revocable and part of the estate; LATHAM'S plea to the jurisdiction and motion to vacate; Motion for Temporary Restraining Order and Temporary Injunction; Latham's verified Motion to transfer venue and compel arbitration; Citation*

68.     MURIEL MINTZ was never served with process and was illegally seized from her home, as MICHELLE GOLDBERG stole her assets in a void court order which could not possibly have appointed her as temporary or permanent guardian because of the egregious deprivations of due process and equal protection of the laws.

69.     Given that fraud VITIATES EVERYTHING IT TOUCHES and the guardianship was void from the outset, and JUDGE WOOD' statement that clear and convincing evidence demonstrated MURIEL was totally incompetent and should retain NO RIGHTS WHATSOEVER.

70.     MURIEL MINTZ WAS DENIED every imaginable right violating rules of evidence, statutes, common law, the Texas and U.S. Constitution, committing torts, crimes and civil rights violations against her. She was never provided with even a voice, much less an opportunity to meaningfully participate as mandated by the ADA;

71.     DEFENDANTS SEIZED MURIEL AND SEQUESTERED HER AND SEIZED HER ASSETS, over $116,000 with NO JURISDICTION TO DO SO, violating the 4th Amendment to the United States Constitution and 42 U.S.C. 1983, the ADA, 42 U.S.C. 12101 et seq, Section 504 of the Rehabilitation Act of 1973, the 14th Amendment (due process and equal

---

*returns proving MURIEL was never served with process such that this entire case was a complete deprivation of all due process, Durable / Medical Powers of Attorney granted to Latham by Muriel; Application for guardian and attorneys' fees of Michele Goldberg which must be disgorged for fraud on the court; Muriel L Mintz Family Trust, and December 22nd Letter from C. Schwager to Houston Hospice, 3rd Amended Complaint in Cause NO. 4:16-01910; Carolyn James vs Stephen Calkins; pending before the Honorable David Hittner (a similar example of Judge Mike Wood acting in the complete absence of subject matter jurisdiction, for which no immunity attaches); Transcripts of Oral Hearings dated 10/31/17 (demonstrating collusion with LATHAM'S prior counsel) and 11/28/17 (Motion for emergency continuance of show cause hearing; as well as 12/12/17 (to be amended upon receipt from court reporter imminently);*

protection as well as the right to be safe while in custody and the right to adequate medical care), with criminal and tortious violations of the 1st Amendment, 4th, 5th, 6th, 7th, 8th, and 14 Amendments to the U.S. Constitution and Articles I and V of the Texas Constitution.

72.     DEFENDANTS ARE IN THE PROCESS OF HASTENING HER DEATH IN A CRIMINAL SCHEME THAT HAS BECOME UNDENIABLE ELDER ABUSE: Texas Penal Code 22.04 (elder abuse), which provides:

> § 22.04.  INJURY  TO  A  CHILD,  ELDERLY  INDIVIDUAL,  OR DISABLED INDIVIDUAL
> A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:
>> **(1)** serious bodily injury
>>
>> **(2)**  (2) Serious mental deficiency, impairment, or injury;  or
>>
>> **(3)** bodily injury.
>
> (A-1) **A person commits an offense if the person is an owner, operator, or employee of a group home, nursing facility, assisted living facility, intermediate care facility for persons with mental retardation, or other institutional care facility and the person intentionally, knowingly, recklessly, or with criminal negligence by omission causes to a child, elderly individual, or disabled individual who is a resident of that group home or facility:**
> (1) serious bodily injury;
>
> **(2)      Serious mental deficiency, impairment, or injury;**
>
>  (3)  bodily injury;
>
> (4) **exploitation**.
>
>  (b)  An omission that causes a condition described by Subsection (a)(1), (2), or (3) or (a-1)(1), (2), (3), or (4) is conduct constituting an offense under this section if: (1) the actor has a legal or statutory duty to act; or
>  (2) the actor has assumed care, custody, or control of a child, elderly individual, or disabled individual.
>
> (4) **"Exploitation" means the illegal or improper use of an individual or of the resources of the individual for monetary  or personal benefit, profit, orgain.**
>
> (d) For purposes of an omission that causes a condition described by

Subsection (a)(1), (2), or (3), the actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for

or disabled individual. For purposes of an omission that causes a condition described by Subsection (a-1)(1), (2), (3), or (4), the actor acting during the actor's capacity as owner, operator, or

employee of a group home or facility described by Subsection (a-1) is considered to have accepted responsibility for protection, food, shelter, and medical care for the  child,  elderly  individual, or disabled individual who is a resident of the group home or facility.
(e) An offense under Subsection (a)(1) or (2) or  (a-1)(1) or (2) is a felony  of  the  first  degree  when  the  conduct  is  committed intentionally or knowingly.

73.     The entire guardianship is void and has wrought serious bodily injury upon 93-year-old MURIEL MINTZ, a protected person with a disability under federal law.

74.     LATHAM sought relief from Harris County Probate Judge Mike Wood via temporary restraining order after Wood admitted that KELLY'S freezing LATHAM'S federally insured FDIC and IRA funds was wrongful and a pre-hearing deprivation of property, but refused to sign an order mandating KELLY cease and desist her hold; He told the lawyers they should permit as much access to information about MURIEL and access to MURIEL as possible, but he refused to sign a written order, commanding them to do so;

75.     LATHAM'S TRO APPLICATION was denied December 12, 2017 to allow GOLDBERG to continue to ban and threaten ESTELLE AND BARBARA with trespass knowing that their 30+ years of nursing experience would expose their scheme; SCHWAGER was prohibited from cross examining any witness and no evidence to support a Temporary Restraining ORDER was ever produced, by the JUDGE and DEFENDANTS' admissions;

76.     On the 12th of December, KELLY'S TEMPORARY INJUNCTION, enjoining LATHAM completely from performing her duties as trustee was granted, over objections it

was overbroad and a page from Tricks and Traps to tie her hands behind her back and render her incapable of defending herself; All relief requested by SCHWAGER for LATHAM AND NELSON was denied including medical records and the items in the TRO filed; WOOD also violated SCHWAGER'S ADA ACCOMODATION REQUEST, admitting he was unfamiliar with the ADA.

77.    From 11/24 to 12/5 neither ESTELLE NOR BARBARA EVEN knew where MURIEL was and the information obtained thereafter in the approximate 4 occasions they were not banned and threatened with trespass was either fabricated or scant.

78.    The purported guardian lacks sufficient information concerning MURIEL'S medical history or health issues to be capable of providing informed consent, such that this constitutes criminal medical battery, committed by Goldberg (felony) which is intended to result in death, violating 18 USC 241, 242.

79.    DEFENDANTS are not entitled to immunity because of the absence of all jurisdiction in this case over MURIEL MINTZ or her property; *See Unserved Returns and Affidavit of Barbara Latham proving that MURIEL MINTZ was never served with any guardianship petition in this case, depriving the Court of all jurisdiction and rendering all ORDERS issued NULL AND VOID.*

80.    JUDGE WOOD HAS NO IMMUNITY BECAUSE HE HAS ACTED IN THE ABSENCE OF ALL JURISDICTION—a pattern of abuse seen in almost every case reported against him by the Court of appeals or in the news.

81.    The affidavits of BARBARA LATHAM, a Registered Nurse (30 years, inactive) are based upon observations that raised serious red flags in her mind and that of her sister, a geriatric R.N with 30 years of experience, revealing the cover up and deception DEFENDANTS are clearly

engaged to deprive MURIEL of even life itself for no justifiable reason.

**82.**     THIS IS A TRUE EMERGENCY AND DEATH IS IMMINENT if it has not already

occurred. PLAINTIFFS are filing for HABEAS CORPUS relief in the Court of Appeals as well

but desperately plead for this Court's intervention. JUDGE MIKE WOOD has

demonstrated he is utterly unwilling to consider LATHAM'S pleas to intervene and stop

MURIEL from being criminally battered by an incompetent purported temporary guardian who

is not informed enough to make medical decisions concerning MURIEL that aren't criminal.

JUDGE WOOD has been unyielding regardless of the dangers LATHAM'S counsel disclosed as

risks to MURIEL. Judge Wood was unwilling to even mandate that MICHELE be transparent

and share medical records with family so that Muriel's medically trained daughters could help

her make appropriate decision.

83.     LATHAM filed an APPLICATION FOR TRO mirroring the relief requested from

this Honorable Judge and every request was denied, with WOOD only begrudgingly agreeing to

orally suggest that MICHELE "do her best" to provide information and access to BARBARA

AND ESTELLE.

84.     JUDGE WOOD refused to sign an ORDER mandating this and the result was

predictable— MICHELE lied, fabricated mistruths, twisted facts, failed to share any medical

information with BARBARA OR ESTELLE that was actually significant. Much of what she said

has been deceptive in a clear attempt to conceal the truth—DEFENDANTS' plan to terminate

MURIEL'S life in hospice to take her assets.

85.     MURIEL had virtually no health problems for the 7-8 months she resided with

BARBARA but ended up on hospice three weeks after MICHELE took over. MURIEL had no

terminal illness that would ever have merited hospice.

86.     PLAINTIFFS fear that unless this Court intervenes to save MURIEL'S life, she will be dead in 48 hours if not less, leaving them devastated as in the case, of Willie Jo Mills Cause No. 4:16-cv-03215; *Sherry Lynn Johnston vs. David Dexel, Judge Christine Butts, et al; In the Southern District of Texas, Houston Division, before Judge Lee Rosenthal[3]*. MILLS and MINTZ were deprived of all civil rights with the stroke of a pen and ended up on hospice, suffering horrific torture and abuse which will forever scar the lives of their daughters.

*87.*     MURIEL MINTZ'S person and estate was fraudulently, illegally searched and seized after which she was discarded within a matter of three weeks by MICHELLE GOLDBERG, who claims she fell in the assisted living (landing her in St. Luke's and now Houston Hospice) on the edge of death for conditions MICHELLE claims exist, but MURIEL'S RN daughters did not observe any signs. Instead, BARBARA observed their mother is being starved to death and denied water and medical care. Houston Hospice entities get paid 90% of their costs from Medicare, creating a nationwide incentive for abuse, well documented by Bloomberg and Forbes. *The Affidavits of Latham demonstrate a conspiracy of fraud, lies, and a cover up suggesting foul play is at work rather than natural death processes. See Affidavits attached hereto.*

88.     SCHWAGER provided notice as a certified ADA advocate, emphasizing that attorney training is desperately needed. *See email to Judges of three of four probate courts in Harris County, Texas, 2015. Without an understanding of disabilities, attorneys cannot possibly give informed consent, rendering every medical decision criminal battery.* The result is systemic victimization of the vulnerable through disability discrimination, associational discrimination, retaliation for advocating for the disabled, and unwanted institutionalization and segregation deemed illegal in nursing homes, by virtue of the Olmstead Act and Title II of the ADA.

89.     Despite providing notice two years ago of the County's failure to train court appointed attorneys and guardians with respect to ADA compliance or even competence, HARRIS COUNTY has done nothing and continues to egregiously discriminate against vulnerable persons with disabilities. As a result, the elderly and disabled are subjected to cruel and unusual punishment (death), deprivations of equal protection of the law, the guarantee of safety while in the custody of the county, Constitutional rights under the 1st,4th, 5th, and 14th Amendments to the United States Constitution, and discrimination prohibited by 42 U.S.C. 1983 (The Civil Rights Act) and 42 U.S.C. 12101 et seq., the Americans with Disabilities Act of 1990 and Amendments thereto, ADAAA 2008 and 2016, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). *See Carolyn James vs. Stephen Calkins; In re Alpert, In re Whatley; Stories re Doris Davis whose whereabouts and condition remain unknown after months of Wood's court refusing to tell the family*;

90.     GOLDBERG, BARBARA LATHAM is the only person with authority to act on MURIEL'S behalf in this matter and is granted sole discretion, which remains unaffected by GOLDBERG'S attempted albeit VOID APPOINTMENT. GOLDBERG was never validly appointed because JUDGE WOOD failed to acquire personal or subject matter jurisdiction over MURIEL MINTZ by failing to ensure MURIEL was served with process, rather than denied notice and an opportunity to be heard, aside from additional bases.

91.     MICHELE GOLDBERG's *purported appointment* is VOID for lack of jurisdiction over MURIEL MINTZ OR HER PROPERTY by the failure of any party, court appointed lawyer, temporary guardian, attorney or the judge to verify that MURIEL MINTZ was SERVED WITH PROCESS FIRST. MURIEL MINTZ was never given legally mandated notice or any opportunity to be heard or participate in a predatory guardianship proceeding filed with DONALD MINTZ'S perjured affidavit.

92.    DONALD AND HIS ATTORNEY, STACY KELLY, MICHELE GOLDBERG, TERESA PITRE (court appointed attorney ad litem providing ineffective assistance of counsel), the PRESIDING JUDGE, and LATHAM'S first attorneys (fired for betrayal) ERINN BROWN AND MATTHEW MAHONEY all played a part in this criminal scheme devised to seize control of MURIEL MINTZ, BARBARA LATHAM, AND THE MINTZ FAMILY TRUST'S assets by DONALD MINTZ. The modus operandi is repeated over and over in Harris County Probate Courts with the schemes involved to accomplish their goal detailed in their own advanced continuing education writings filed with the Texas State Bar. *See e.g. Tricks and Traps from a Litigator and Judicial Perspective, discussing pre-hearing deprivations of property to cripple your opponent, force inequitable settlement under duress, and obtain favor with the Judge for enriching the "system.[4]"*

93.    DONALD MINTZ is MURIEL'S son, who masterminded this criminal scheme to seize MURIEL'S person, estate and then use the guardianship to seize all assets in the MURIEL MINTZ FAMILY TRUST by removing his sister, co-trustee LATHAM with perjured affidavits and false accusations of theft of trust assets, as well as abuse, exploitation and/or neglect of MURIEL MINTZ and her estate. The evidence shows premeditation on the part of DONALD MINTZ as early as 2015, when he had the trust formed and convinced MURIEL to place over $150,000 in assets into an IRREVOCABLE TRUST that he and BARBARA would be Co-Trustees for the benefit of MURIEL'S THREE ADULT CHILDREN, Donald, Barbara and Estelle Nelson.

*94.*    DONALD MINTZ colluded and conspired with attorney STACY KELLY, purported temporary guardian MICHELE GOLDBERG, JUDGE MIKE WOOD, TERESA PITRE, and seemingly BARBARA'S first two attorneys, ERINN BROWN AND MATTHEW MAHONEY, prior to firing them and hiring new counsel. *The evidence of that collusion is extensive but is included in the attached schedule of exhibits, consisting of LAWSUITS, MOTIONS, ORDERS,*

---

[4] Written by the Honorable Mike Woods and Stacy Kelly's Law Firm, Ostrom Morris, who coincidentally represented the colluding son of the decedent, resulting in the wrongful death of his mother, Willie Jo Mills (deceased) in guardianship in Court No. 4, Hon. Christine Butts. Cause No.

*AFFIDAVITS, and other documents filed in the official Court files of Cause No. 456, 059, 462505.*

95.    ATTORNEY STACY KELLY, MICHELE GOLDBERG took control of more than $250,000 in MURIEL'S estate and/or the MURIEL L. MINTZ FAMILY TRUST, which is an IRREVOCABLE TRUST that has nothing to do with MURIEL MINTZ, such that the Court's ORDER TO SHOW CAUSE AND ORDER TO PRODUCE DOCUMENTS is VOID.

96.    GOLBERG had no standing to make such demands, but threatened and coerced LATHAM to provide documents personal private banking documents protected by the Federal Banking Secrecy Act (prohibiting unauthorized access to the same absent consent or legitimate criminal law enforcement investigation), using a void Texas Statute, purporting to allow probate courts and their authorized representatives to "spy" on citizens bank accounts to determine if they need "protection" by a cottage industry of high paid fiduciaries seeking maximum profit and limited liability for the damage caused.

**97.**    MURIEL MINTZ stands to be deprived of fundamental human rights to life, liberty and property, by the failure of DONALD MINTZ, MICHELE GOLDBERG, STACY KELLY, JUDGE WOOD, TERESA PITRE and JUDGE MIKE WOOD, to even serve her with notice and the opportunity to be heard, due process fundamentals.

**98.**    WOOD issued ORDERS subjecting MURIEL to unreasonable search and seizure, deprivations of fundamental rights guaranteed by the U.S. Constitution, Amendments 1 (associational discrimination, deprivation of the right to life), 5, 14 (due process, equal protection, the right to be safe in state custody and receive adequate medical care), 4, 5, 6 (right to EFFECTIVE assistance of counsel), 7 (right to trial by jury), without ever serving her with process to obtain jurisdiction over her person and estate.  and 8medical battery, false imprisonment, cruel and unusual punishment of forced starvation, dehydration and drugging in hospice to hasten her death

### XIII.   <u>EMERGENCY RELIEF SOUGHT</u>

**99.**    PLAINTIFFS seek an EMERGENCY TEMPORARY RESTRAINING ORDER to prevent DEFENDANTS from forcing her into hospice to be starved, dehydrated and drugged

to death when she has no terminal illness that would otherwise warrant even serious medical care—in a process known as STEALTH EUTHANASIA, which usually manages to remain hidden or concealed from detection; *See article on Stealth Euthanasia.* PLAINTIFFS seek an ORDER:

100.   ENJOINING THE DEFENDANTS FROM VIOLATING MURIEL MINTZ'S RIGHTS and mandating her immediate release to BARBARA LATHAM'S custody, transporting her to any facility LATHAM directs on an emergency basis;

101.   ENJOINING DEFENDANTS FROM FURTHER CONTACT WITH MURIEL MINTZ OR BARBARA LATHAM,

102.   ENJOINING DEFENDANTS from being within 200 years of BARBARA LATHAM, MURIEL MINTZ or the residence they reside;

103.   GRANTING PLAINTIFFS' EMERGENCY TEMPORARY RESTRAINING ORDER AND SETTING PLAINTIFFS' PRELIMINARY INJUNCTION FOR HEARING as soon as reasonably possible given MURIEL'S dire health emergency and the need for witnesses by the parties;

104.   PROHIBITING any and all persons from depriving MURIEL MINTZ of food, Water, hydration, adequate medical care, critical medication, that conforms to the standard of care mandated for her dire health emergencies

105.   ENJOINING the administration of dangerous sedating drugs or opiates to MURIEL MINTZ, that carry the risk of death or bodily injury to MURIEL;

106.   ENJOINING DEFENDANTS from harassment OF BARBAA LATHAM, MURIEL MINTZ by malicious vindictive reports to the police and/or ADULT PROTECTIVE SERVICE or other governmental organizations without a sincere belief in the validity of such

report,

107.    ENJOINING any further deprivations of privileges and immunities guaranteed to MURIEL MINTZ AND BARBARA LATHAM by Articles I and V of the Texas Constitution, ADA and ADAAA, 42 U.S.C. 12101, Section 504 of the Rehabilitation Act of 1973, 29 USC 794, 42 USC 1983, the 1st, 4th, 5th, 6th, 7th, 8th, and/or 14th Amendments of the United States Constitution, or any State or Federal law granting MURIEL rights of protection against deprivations of right, abuse, neglect, or exploitation;

108.    ENJOINING DEFENDANTS from restraining or attempting to interfere with MURIEL MINTZ'S or BARBARA LATHAM'S right to liberty, property or life, including any and all attempts to seize property belonging to PLAINTIFFS or the MURIEL MINTZ FAMILY TRUST.

109.    ENJOINING DEFENDANTS from any and all attempts to place holds upon, freeze or seize assets belonging to BARBARA or MURIAL'S assets.

110.    MANDATING that GOLDBERG return all funds she seized from MURIEL MINTZ, BARBARA LATHAM, THE MINTZ FAMILY TRUST, or any account in connection with this case;

111.    MANDATING DEFENDANTS cease and desist from taking any property believed to belong to BARBARA LATHAM OR MURIEL MINTZ or the MURIEL L MINTZ FAMLY TRUST;

112.    MANDATING that DEFENDANTS immediately remove all encumbrances placed on any financial account of BARBARA LATHAM, MURIEL MINTZ OR THE MINTZ FAMILY TRUST, irrespective of further fiduciary designations;

113.    DECLARING ALL ORDERS issued in the guardianship of MURIEL MINTZ NULL

AND VOID; ENJOINING THEIR ENFORCEMENT;

114.    MANDATING DEFENDANTS RETURN ALL FUNDS taken without the consent of BARBARA LATHAM, regardless of whether such funds were seized from personal or trust accounts of BARBARA LATHAM OR MURIEL MINTZ to the banks from which they were confiscated

115.    MANDATING DEFENDANTS CEASE AND DESIST from any and all efforts and/or attempts to contact or communicate with MURIEL MINTZ OR BARBARA LATHAM by phone, email, text message, mail or any other means, including through a third party;

116.    MANDATING HOUSTON HOSPICE IMMEDIATELY CEASE AND DESIST from withholding food, water, critical and necessary medications or health care geared to recover or administering any sedating drug or opiate typically used in hospice to hasten death or sedate;

117.    MANDATING HOUSTON HOSPICE IMMEDIATELY RELEASE MURIEL MINTZ TO BARBARA LATHAM, durable and medical power of attorney, health care surrogate, and guardian in the event of need and comply with any directive by LATHAM regarding transport of her mother to a hospital for emergency medical care.

118.     ENJOINING THE DEFENDANTS FROM VIOLATING MURIEL MINTZ'S RIGHTS and mandating her immediate release to BARBARA LATHAM'S custody, transporting her to any facility LATHAM directs on an emergency basis;

119.    ENJOINING DEFENDANTS from coming within 200 yards of MURIEL MINTZOR BARBARA LATHAM;

120.    ENJOINING DEFENDANTS from disturbing the peace of BARBARA LATHAM OR MURIEL MINTZ.

121.    ENJOINING ANY AND ALL medical professionals from denying MURIEL MINTZ food, water, hydration, adequate medical care or administering opiates and other dangerous drugs used to hasten death in hospice;

122.    ENJOINING DEFENDANTS from all acts of harassment that have pervaded this case and terrorized LATHAM, including but not limited to welfare checks and police reports which are not SERIOUS and based upon ACTUAL EVIDENCE rather than slander, supposition or malicious intent;

123.    ENJOINING any further acts in this conspiracy to deprive MURIEL MINTZ of life, liberty, and property without due process of law, equal protection or any other Constitutional, federal, state, statutory or common law right;

124.    DECLARING ALL ORDERS issued in the guardianship of MURIEL MINTZ void for fraud on the court, lack of notice, failure to serve MURIEL, denial of the due process and equal protection of the law, discrimination, denial of the right to effective representation of counsel, denial of the right to jury trial, lack of jurisdiction, improper venue, mandatory arbitration; and lack of standing;

125.    MANDATING that MICHELE GOLDBERG be disgorged and immediately return all funds taken or paid to her from any account whatsoever in the Muriel Mintz guardianship, as an unauthorized taking of property without due process of law;

126.    MANDATING that DEFENDANTS RETURN ALL FUNDS SEIZED FROM LATHAM, the MJRIEL MINTZ FAMILY TRUST, OR MURIEL MINTZ IMMEDIATELY to the banks from which they were wrongfully taken and/or confiscated without due process of law or any evidence to justify the same;

127.    MANDATING THAT DEFENDANTS CEASE AND DESIST FROM ALL

CONTACT OR EFFORTS TO HARASS BARBARA LATHAM OR MURIEL MINTZ by prohibiting DEFENDANTS from emailing, calling, or coming within 200 years of any location where DEFENDANTS believe PLAINTIFFS to be;

a.    PLAINTIFFS seek damages against DEFENDANTS jointly and severally in an amount within the jurisdictional limits of this Court for deprivations of constitutionally protected rights and violations of their rights under the ADA and ADAAA or any other torts or state/federal laws;

b.    PLAINTIFFS seek reasonable costs and expenses of this action, including attorneys' fees in accordance with 42 U.S.C. § 1988.

c.    PLAINTIFFS pray the Court Grant such other and further relief as this Court shall seem just and equitable.

d.    ORDERING AN EMERGENCY HEARING BE SET ON PLAINTIFFS' PRELIMINARY INJUNCTION TO REVIEW ALL ISSUES IN THIS MATTER TO BE SET ON THE____DAY OF_____, 2017.

e.    PLAINTIFFS pray that this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order. In support of this relief, PLAINTIFFS plead the following:

### XIV.   COUNT 1: 42 USC 1983 CONSTITUTIONAL VIOLATIONS

128.    A governmental entity deprives a citizen of due process by not following its own procedures—prior to deprivations of privileges and immunities guaranteed by the Constitution or federal law. MURIEL MINTZ'S rights have been grossly violated and consciously disregarded to the point of near death without ever having a hearing or the opportunity to appear before the Court and OBJECT!

129.    The ADA requires Harris County provide a MEANINGFUL OPPORTUNITY to

participate and HARRIS COUNTY provided NO OPPORTUNITY WHATSOEVER TOMURIEL MINTZ, despite HARRIS COUNTY'S expert witness stating she can and should attend her hearing—that did not occur, because few wards are ever given a hearing in guardianship.

130.     Despite the impropriety and illegality for the Court to do anything but find probable cause at the HEARING that was mandated for temporary guardianship, the Court violated the law and COULD NOT POSSIBLY HAVE FOUND MURIEL incapacitated by "clear and convincing evidence"—revealing this report was little more than rubber stamped. *The attached returns of service indicate that she was never served with process and was totally deprived of the right to notice and the opportunity to be heard mandated by the 5th and 14th Amendments*.

131.     The Temporary / Permanent guardianship ORDER IS VOID. There was no hearing, no trial, no expert testimony or evidence produced, and the record is clear – MURIEL WAS NEVER EVEN SERVED WITH NOTICE OF THE GUARDIANSHIP, depriving JUDGE WOOD of ALL SEMBLANCE OF JURISDICTION OVER MURIEL.

132.     DEFENDANTS fraudulently misrepresented in Court records that MURIEL MINTZ was served with process when MURIEL was never in the courtroom as they fraudulently stated in the record, but was hospitalized the night before. WOOD could not possibly have determined MURIEL WAS TOTALLY INCAPACITATED by clear and convincing evidence without a conducting a hearing in which an expert provided testimony under Rule 702 of the Texas Rules of Evidence and the *Daubert case*.

133.     Temporary Guardianship was never appropriate in this case, as no emergency was ever even identified to justify such extraordinary relief. While emergency temporary

guardianships are sometimes required, JUDGE GUY HERMAN reiterates that they are rarely justified and abused more often than not-to deprive others of statutorily mandated notice. *See Guy Herman article, attached hereto.*

134.     MURIEL MINTZ WAS NEVER SERVED WITH PROCESS OR NOTICE AND WAS NOT GIVEN THE OPPORTUNITY TO BE PRESENT prior to being deprived of ALL RIGHTS, this Court had no jurisdiction over MURIEL rendering every ORDER signed VOID and unenforceable. When fraud so permeates as case that almost nothing about the proceeding is legitimate, it's void. FRAUD VITIATES EVRYTHING IT TOUCHES this guardianship was void from the start. MURIEL is a hostage being falsely imprisoned and put to death in violation of every human rights law imaginable, clearly cruel and unusual punishment for the crime of getting old.

135.     The Court made no findings of whether less restrictive alternatives were available and failed to even consider its own expert's findings, which negated any rationale for depriving MURIEL of ALL RIGHTS WITHOUT LIMITATION AS THIS VOID GUARDIANSHIP ORDER PURPORTS TO DO.

136.     Supports and services mandated by the ADA to be provided to MURIEL as a "qualified individual with a disability" were not even proposed much less considered nor was there any clear identification of the emergency justifying this guardianship, VIOLATING THE

137.     In her fervor to end MJRIEL'S life and seize her assets, MICHELE GOLDBERG would not even get a second opinion as to whether hospice was appropriate or other measures short of death were appropriate, despite BARBARA AND ESTELLE'S pleas.

138.     The Estates Code mandates that the proposed ward's wishes as demonstrated in prior

designations be honored and MURIEL'S were ignored completely. This provision is not discretionary but mandatory! Yet not one attorney even mentioned it, particularly her court appointed lawyer, TERESA PITRE, who breached her fiduciary duty to MURIEL and continues to collude with those seeking to inflict harm.

139.   Seeking to ensure MURIEL received the best care possible with decisions made by those who know her best, LATHAM'S counsel asked the Court to order the temporary guardian to execute HIPPAA RELEASES to each adult child of MURIEL MINTZ, BUT WOOD REFUSED. It suddenly became evident that nobody cared about MURIEL'S best interests. They had long since disregarded her entirely concerned with covering up their guilt.

140.   BARBARA was and remains the only valid durable power of attorney, medical power of attorney or health care surrogate despite the tricks and traps designed to deceive her into backing down in favor of a purported temporary guardian who was never appointed in a valid court order to do anything on behalf of MURIEL. As such, every nasty action taken by GOLDBERG to block her daughters from access to her person or medical information was tortious.

141.   The focus of the guardianship has rarely been about MURIEL MINTZ, BUT ALMOST EXCLUSIVELY about her money and trust funds of the family that experienced trust lawyer GOLDBERG billed $18,000 to hunt down, harass, demand private and trust documents she had no legal right to see, and even get a show cause order threatening to arrest LATHAM, when she never had standing for any of this and knew better.

142.   JUDGE WOOD categorically refused to follow the law, violating Schwager's ADA accommodation rights, ignoring the Texas Trust Code's mandatory venue provision and his duty to cease forcing this case into evidentiary hearings given any and all disputes are

subject to mandatory arbitration. In doing so, he repeatedly abused his discretion in favor of lawlessness rather than the rule of law.

*143.* SCHWAGER lodged objections to the hearing going forward at all given the lack of venue, jurisdiction, mandatory arbitration, lack of evidence, overbroad order, and denial of due process in prohibiting SCHWAGER from cross examination of witnesses who testified. *The transcript of the December 12, 2017 proceeding has been requested but delayed by the holidays and will be supplemented imminently; see also affidavit of Candice Schwager.*

144.    SCHWAGER pointed out that the ORDER for INJUNCTION is precisely the type of "Unconstitutional" trick or trap discussed in the article co-authored by this judge as a means to disarm opponents, cripple their ability to defend themselves or fight back (allowing the perpetrator to force a settlement and win favor with the judge. In complete abandonment of the duty to follow any law, the Court issued broad injunctive relief in the absence of any proof of irreparable injury or a probable right of success at trial. The evidence revealed that LATHAM did nothing she was not authorized to do under the trust. When informed that LATHAM'S motive for moving funds was to protect them from DONALD MINTZ, WOOD said he was charged with deciding whether LATHAM would be permitted to "protect" the trust any longer.

145.    JUDGE WOOD enjoined the sole trustee, BARBARA LATHAM, from exercising authority over the MINTZ FAMILY TRUST, far exceeding the authority given to him under Texas law notwithstanding his lack of jurisdiction and venue;

146.    Acknowledging there was no evidence of wrongdoing on the part of BARBARA LATHAM as TRUSTEE, the JUDGE STILL enjoined LATHAM from 'PROTECTING THE TRUST' signing a void injunction ORDER which was devoid of jurisdiction as much as the entire

guardianship case.

147.    MICHELLE GOLDBERG spent $18,000 WHICH IS HALF OF MURIEL'S ANNUAL INCOME, chasing trust funds that she could see on the face of the document did not belong to Muriel, her estate and were in an irrevocable trust benefitting the children of MURIEL MINTZ. She filed a 73-page show cause motion and order that she never had standing to assert causing LATHAM to be threatened with incarceration wrongfully as the court invaded her personal accounts and a trust over which it had no jurisdiction to threaten jail for not producing the documents.

148.    JUDGE MIKE WOOD admitted that KELLY'S hold on BARBARA LATHAM'S IRA'S and GOLDBERG'S seizure of $6000+ in bank funds from LATHAM'S checking account constituted an unauthorized pre-hearing deprivation of property, much like the strategies outlined in his CLE, *Tricks and Traps*. Yet, he refused to sign an ORDER prohibiting their unlawful acts.

149.    Houston Hospice has violated and will further violate MURIEL's below rights under the Constitution and laws of the United States and specifically the First, Eighth, and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq., the Americans with Disabilities Act (42 U.S.C. §12101 et seq.), the Rehabilitation Act of 1973 (29 U.S.C. §794), and Title 42 U.S.C. § 1983 for which monetary damages are sought.

## XV.    TRO AND PRELIMINARY INJUNCTION

**PLAINTIFFS SEEK A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION STATING:**

*150.*    AN EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY

INJUNCTION TO SAVE THE LIFE OF MURIEL L MINTZ from imminent death in a conspiracy forcing her into hospice to be starved, dehydrated and drugged to death when she has no terminal illness that would otherwise warrant even serious medical care—in a process known as STEALTH EUTHANASIA, which usually manages to remain hidden and concealed and would have but for PLAINTIFF and her sister ESTELLE'S advanced medical training which caused them to detect it,; *See article on Stealth Euthanasia.*

151.    ENJOINING THE DEFENDANTS FROM VIOLATING MURIEL MINTZ'S RIGHTS and mandating her immediate release to BARBARA LATHAM'S custody, transporting her to any facility LATHAM directs on an emergency basis;

152.    ENJOINING DEFENDANTS FROM FURTHER CONTACT WITH MURIEL MINTZ OR BARBARA LATHAM,

153.    ENJOINING DEFENDANTS from being within 200 YARDS of BARBARA LATHAM, MURIEL MINTZ or the residence they reside;

154.    GRANTING PLAINTIFFS' EMERGENCY TEMPORARY RESTRAINING ORDER AND SETTING PLAINTIFFS' PRELIMINARY INJUNCTION FOR HEARING as soon as reasonably possible given MURIEL'S dire health emergency and the need for witnesses by the parties;

155.    PROHIBITING any and all persons from depriving MURIEL MINTZ of food, Water, hydration, adequate medical care, critical medication, that conforms to the standard of care mandated for her dire health emergencies

156.    ENJOINING the administration of dangerous sedating drugs or opiates to MURIEL MINTZ, that carry the risk of death or bodily injury to MURIEL;

157.    ENJOINING DEFENDANTS from harassment OF BARBAA LATHAM, MURIEL

MINTZ by malicious vindictive reports to the police and/or ADULT PROTECTIVE SERVICE or other governmental organizations without a sincere belief in the validity of such report,

158. ENJOINING any further deprivations of privileges and immunities guaranteed to MURIEL MINTZ AND BARBARA LATHAM by Articles I and V of the Texas Constitution, ADA and ADAAA, 42 U.S.C. 12101, Section 504 of the Rehabilitation Act of 1973, 29 USC 794, 42 USC 1983, the 1st, 4th, 5th, 6th, 7th, 8th, and/or 14th Amendments of the United States Constitution, or any State or Federal law granting MURIEL rights of protection against deprivations of right, abuse, neglect, or exploitation;

159. ENJOINING DEFENDANTS from restraining or attempting to interfere with MURIEL MINTZ'S or BARBARA LATHAM'S right to liberty, property or life, including any and all attempts to seize property belonging to PLAINTIFFS or the MURIEL MINTZ FAMILY TRUST.

160. ENJOINING DEFENDANTS from any and all attempts to place holds upon, freeze or seize assets belonging to BARBARA LATHAM OR MURIEL MINTZ

161. MANDATING that GOLDBERG return all funds she seized from MURIEL MINTZ, BARBARA LATHAM, THE MINTZ FAMILY TRUST, or any account in connection with this case;

162. MANDATING DEFENDANTS cease and desist from taking any property believed to belong to BARBARA LATHAM OR MURIEL MINTZ or the MURIEL L MINTZ FAMLY TRUST;

163. MANDATING that DEFENDANTS immediately remove all encumbrances placed on any financial account of BARBARA LATHAM, MURIEL MINTZ OR THE MINTZ

FAMILY TRUST, irrespective of further fiduciary designations;

164.    DECLARING ALL ORDERS issued in the guardianship of MURIEL MINTZ NULL AND VOID; ENJOINING THEIR ENFORCEMENT;

165.    MANDATING MICHELE GOLDBERG be disgorged and immediately return all funds which she was paid in this matter for misconduct and deliberate wasting of MINTZ'S resources THROUGH FRAUD;

166.    MANDATING DEFENDANTS RETURN ALL FUNDS taken without the consent of BARBARA LATHAM, regardless of whether such funds were seized from personal or trust accounts of BARBARA LATHAM OR MURIEL MINTZ to the banks from which they were confiscated

167.    MANDATING DEFENDANTS CEASE AND DESIST from any and all efforts and/or attempts to contact or communicate with MURIEL MINTZ OR BARBARA LATHAM by phone, email, text message, mail or any other means, including through a third party;

168.    MANDATING HOUSTON HOSPICE IMMEDIATELY CEASE AND DESIST from withholding food, water, critical and necessary medications or health care geared to recover or administering any sedating drug or opiate typically used in hospice to hasten death or sedate;

169.    MANDATING HOUSTON HOSPICE IMMEDIATELY RELEASE MURIEL MINTZ TO BARBARA LATHAM, durable and medical power of attorney, health care surrogate, and guardian in the event of need and comply with any directive by LATHAM regarding transport of her mother to a hospital for emergency medical care;

170.    ORDERING AN EMERGENCY HEARING BE SET ON PLAINTIFFS' PRELIMINARY INJUNCTION TO REVIEW ALL ISSUES IN THIS MATTER TO BE SET

ON THE ____DAY OF____, 2017.

171.   ENJOINING THE DEFENDANTS FROM VIOLATING MURIEL MINTZ'S RIGHTS and mandating her immediate release to BARBARA LATHAM'S custody, transporting her to any facility LATHAM directs on an emergency basis;

172.   ENJOINING DEFENDANTS from coming within 200 yards of MURIEL MINTZOR BARBARA LATHAM;

173.   ENJOINING DEFENDANTS from disturbing the peace of BARBARA LATHAM OR MURIEL MINTZ.

174.   ENJOINING ANY AND ALL medical professionals from denying MURIEL MINTZ food, water, hydration, adequate medical care or administering opiates and other dangerous drugs used to hasten death in hospice;

175.   ENJOINING DEFENDANTS from all acts of harassment that have pervaded this case and terrorized LATHAM, including but not limited to welfare checks and police reports which are not SERIOUS and based upon ACTUAL EVIDENCE rather than slander, supposition or malicious intent;

176.   ENJOINING any further acts in this conspiracy to deprive MURIEL MINTZ of life, liberty, and property without due process of law, equal protection or any other Constitutional, federal, state, statutory or common law right;

177.   ENJOINING DEFENDANTS from ANY AND ALL attempts to further restrain MURIEL or threaten BARBARA /MURIEL as well as any attempt to freeze, retain or withhold funds to which BARBARA LATHAM has legal title or is believed to be the rightful owner;

178.   DECLARING ALL ORDERS issued in the guardianship of MURIEL MINTZ void

for fraud on the court, lack of notice, failure to serve MURIEL, denial of the due process and equal protection of the law, discrimination, denial of the right to effective representation of counsel, denial of the right to jury trial, lack of jurisdiction, improper venue, mandatory arbitration; and lack of standing;

179.   MANDATING that MICHELE GOLDBERG be disgorged and immediately return all funds taken or paid to her from any account whatsoever in the Muriel Mintz guardianship, as an unauthorized taking of property without due process of law;

180.   MANDATING that DEFENDANTS RETURN ALL FUNDS SEIZED FROM LATHAM, the MJRIEL MINTZ FAMILY TRUST, OR MURIEL MINTZ IMMEDIATELY to the banks from which they were wrongfully taken and/or confiscated without due process of law or any evidence to justify the same;

181.   MANDATING THAT DEFENDANTS CEASE AND DESIST FROM ALL CONTACT OR EFFORTS TO HARASS BARBARA LATHAM OR MURIEL MINTZ by prohibiting DEFENDANTS from emailing, calling, or coming within 200 years of any location where DEFENDANTS believe PLAINTIFFS to be;

a.   PLAINTIFFS seek damages against DEFENDANTS jointly and severally in an amount within the jurisdictional limits of this Court for deprivations of constitutionally protected rights and violations of their rights under the ADA and ADAAA or any other torts or state/federal laws;

b.   PLAINTIFFS seek reasonable costs and expenses of this action, including attorneys' fees in accordance with 42 U.S.C. § 1988.

c.   PLAINTIFFS pray the Court Grant such other and further relief as this Court shall seem just and equitable.

d.    PLAINTIFFS pray that this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order. In support of this relief, PLAINTIFFS plead the following:

## XVI.   42 U.S.C. 1983 (CIVIL RIGHTS ACT VIOLATIONS)

182.    Houston Hospice is a program or activity that receives Federal financial assistance, and is thus a person acting under color of Federal law for purposes of 42 U.S.C. § 2000cc *et seq*. MICHELE GOLDBERG was fraudulently appointed as purported temporary and personal guardian of MURIEL MINTZ without notice, a hearing, due process, evidence of incapacity, evidence of any emergency mandating that temporary or permanent guardianship be given to a stranger as opposed to MURIEL'S very qualified medical professional daughters.

183.    By virtue of her apparent authority, but not actual, she acted under color of State law to deprive MURIEL of the right to life, liberty and property; of 1866, 42 U.S.C. § 1983.

184.    The United States Supreme Court, in *Cruzan v. Missouri Department of Health*, 497 U.S. 261 (1990), determined that the Due Process Clause of the Fourteenth Amendment requires that decisions to remove hydration and nutrition from an incapacitated person must be supported by clear and convincing evidence that the incapacitated person would have made the Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." DEFENDANTS conspired to deprive MURIEL of her eighth amendment right to not be subjected to cruel and unusual punishment, and death by starvation, dehydration and drugging is clearly a violation of the 8th Amendment, ADA and human rights law;

185.    DEFENDANTS knew and exhibited deliberate indifference to a substantial risk of serious harm VIA DEATH, in violation of clearly established Eighth Amendment rights of

which a reasonable person would have known, given the Supreme Court's decisions proscribing the deprivation of food, water, and medical care as well as other basic human needs to those in custody by a judicial decree of the state.

186.    DEFENDANTS have been jointly and severally deliberately indifferent to every constitutional and statutory right guaranteed MURIEL MINTZ under federal and state law, including but not limited to 42 USC 1983, 42 USC 12101 ET SEQ; TEX. PENAL CODE 22.04,[1] 18 USC 241, 242, the 1st, 4th, 5th, 14th, 6th 7th, and 8th Amendment rights and the Texas Constitution Articles I and V.

## XVII.  COUNT 1: ADA and SECTION 504

187.    MURIEL'S rights continue to be violated in clear disability discrimination, as she is subjected to associational discrimination, isolated and confined in Hospice as family and friends are denied access or notice of her whereabouts, as well as all information concerning her status;

188.    Instead of accommodating her rights the JUDGE, who admits he is unfamiliar with the ADA, stated that her presence was not necessary. Apparently, WOOD felt that notice was not needed either and entered void orders which failed to give him jurisdiction over her person or estate as he instructed attorneys to seize her person and assets in violation of the law.

189.    A prima facia claim for discrimination in violation of the ADA requires that PLAINTIFF show:

(1) that he is a qualified individual within the meaning of the ADA;

(2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is

otherwise being discriminated against by the public entity; and

(3)  that such exclusion, denial of benefits, or discrimination is by reason of his disability.

190.    The regulations promulgated under the ADA specify a number of prohibited forms of discrimination. For instance, when providing any aid, benefit, or service, a public entity may not [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). 28 C.F.R. § 35.130(b)(3)(ii).

191.    In addition to bringing claims for denials of benefits or other forms of discrimination, disabled persons can also bring "reasonable accommodation" claims under the ADA. The regulations implementing the ADA require that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R.

§ 35.130(b)(7).

192.    The ADA and Rehabilitation Act "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. The accommodation must be sufficient to provide a disabled person "**meaningful access to the benefit" or service offered by a public entity. S**ee Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

**193.**    If the court finds that an accommodation is required to prevent discrimination, the court must then determine whether the requested accommodation is "reasonable," or whether it would impose "undue financial or administrative burdens" or require a "fundamental

alteration in the nature of the program." Bennett-Nelson, 431 F.3d at 455 n. 12 (quoting School Board of Nassau County v. Arline, 480 U.S. 273, 288 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987))

194.     The Fifth Circuit found that "[t]he Supreme Court has broadly understood a `service' to mean `the performance of work commanded or paid for by another,' or `an act done for the benefit or at the command of another.'" See id. at 226 (quoting Holder v. Humanitarian Law Project, 561 U.S. 1, 23-24, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010)). Jones, Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir.1998) (concluding that "services, programs, and activities include all government activities" and that "the phrase `services, programs, or activities' encompasses virtually everything that a public entity does"). *Hobart v. City of Stafford*, 784 F.Supp.2d 732, 756-57 (S.D.Tex.2011)

195.     The ADA actively and explicitly prohibits public entities from denying to disabled persons any of "the benefits of the services, programs, or activities" that the entities offer or from subjecting disabled persons to any other form of discrimination, 42 U.S.C. § 12132, and mandates that public entities "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

196.     Harris County has been on notice for more than two years via SCHWAGER'S emails to three statutory probate court judges concerning widespread violations of the ADA, inquiring as to what measures they intended to take to ensure that all court appointees understood this law and enforced it and as of December 12, 2017, WOOD admitted that he was unfamiliar with this landmark legislation.

197.     MURIEL MINTZ continues to face discriminatory treatment, threatening to deprive her

of the right to life simply because she is a person with a disability whose worth is diminished in the eyes of predatory attorneys and guardians who routinely end the lives of wards by placing them on hospice as they move on to their next victim.

198.   Section 504 of the Rehabilitation act of 1973, 29 U.S.C. § 794, prohibits discrimination against an "otherwise qualified" handicapped individual, solely by reason of his or her handicap, under any program or activity receiving federal financial assistance. Hospitals and Houston Hospices that accept Medicare and Medicaid funding are subject to the Act. MURIEL was denied any form of rehabilitative therapy in violation of 29 USC 794.

## XVIII. CONCLUSION AND PRAYER FOR RELIEF

**199.**   PLAINTIFFS pray for this Honorable Judge to GRANT PLAINTIFFS' EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION. MURIEL faces imminent death in a conspiracy forcing her into hospice, starved, dehydrated and drugged to death when she has no terminal illness that would otherwise warrant even serious medical care—STEALTH EUTHANASIA, which usually manages to remain hidden and concealed from discovery and/or covered up as in this case. *See article on Stealth Euthanasia.*

200.   PLAINTIFFS seek a TEMPORARY RESTRAINING ORDER ON EMERGENCY BASIS ACCORDING TO THE TERMS PLED;

201.   PLAINTIFFS give notice of intent to amend for wrongful death and other federal claims upon discovery or occurrence of the same in the tragic event that DEFENDANTS succeed in causing MURIEL'S DEATH.

202.   PLAINTIFFS seek reasonable costs and expenses of this action, including attorneys' fees in accordance with 42 U.S.C. § 1988.

203.     PLAINTIFFS pray the Court Grant such other and further relief as this Court shall seem just and equitable.

204.     PLAINTIFFS pray that this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order.

## XIX.   CERTIFICATES AND CLOSING

205.     Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


                                    Respectfully Submitted,

                                    **SCHWAGER LAW FIRM**


                                    _____
                                    Candice L Schwager
                                    Texas Bar No. 24005603
                                     Federal I.D. 30810
                                    1417 Ramada Drive
                                    Houston Texas 77062
                                    Tel: 832.315.8489
                                    Fax: 713.456.2453
                                    candiceschwager@icloud.com
                                    http://www.schwagerfirm.com
                                    **ATTORNEY FOR BARBARA**

**LATHAM AND MURIEL MINTZ**