**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BARBARA LATHAM, Individually and as | § | |
| Heir and Personal Representative of the Estate | § | |
| of MURIEL MINTZ and ESTELLE NELSON, | § | |
| Individually and as Heir to the Estate of | § | |
| MURIEL MINTZ | § | |
| | § | |
| VS. | § | |
| | § | CASE NO. 4-16-CV-03875 |
| | § | HON. VANESSA GILMORE |
| JUDGE MIKE WOOD, Individually and | § | |
| Official Capacity as Statutory Probate Judge | § | |
| Harris County, Texas, MICHELE GOLDBERG | § | |
| Individually & Officially, HARRIS COUNTY, | § | |
| TEXAS, TERESA PITRE, Individually & Offic, | § | |
| DONALD MINTZ, HOUSTON HOSPICE | § | |
| STACY KELLY, ST. LUKE'S EPISCOPAL | § | |
| HOSPITAL, THUY TRIN, DOES 1-100 | § | |

**RESPONSE TO MICHELE GOLDBERG'S**
**MOTION TO DISMISS UNDER FRCP 12B6**

**STANDARD OF REVIEW**

1.     When evaluating a motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and
construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc., 693 F.3d
1317, 1321–22 (11th Cir. 2012).* To survive Rule 12(b)(6) scrutiny, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).* "[F]acial plausibility" exists "when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

2.     The standard of appellate review for a motion to dismiss pursuant to Rule 12(b)(6) is de novo, and the Court will employ the same standard as the district court. First Am. Title Co. v. Devaugh, 480 F.3d 438, 443 (6th Cir. 2007); Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 419 F.3d 462, 468 (6th Cir. 2005).

3.     Whether or not a court has subject matter jurisdiction over a party is a question of law reviewed de novo; thus, a decision on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is an issue of law reviewed de novo. *Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1325, 47 U.S.P.Q.2d 1769, 1772 (Fed. Cir. 1998)*.  On a Rule 12(b)(1) Facial Attack the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013)*.

## FACTS & PROCEDURAL HISTORY

4.     On February 7, 2018, Michele Goldberg, filed a Rule 12(b)(6) Motion to Dismiss in which she also includes Rule 12(b)(1) arguments raising a claim of "derivative immunity", not included in the entire Estates Code and seemingly moot by virtue of Sections 1201.001-1201.003, et seq., addressing standard of care to impose liability on the Judge's bond, set at $500,000.  Goldberg's claim of a "*derivative judicial immunity*" presupposes the existence of a judicial immunity, which does exist where Wood acted in the complete absence of jurisdiction or violated an obvious constitutional right of MURIEL MINTZ or PLAINTIFFS.

5.     GOLDBERG claims to have exercised discretionary authority "comparable to the probate court itself," failing to explain the relevance or the fact that her authority was expressly limited to the Texas Estates Code Section 1251, to the extent she had any authority at all that she did not unlawfully assume. By assuming authority not legitimately granted to her in a valid court proceeding with jurisdiction to enter the order, Goldberg had a fiduciary duty to protect Muriel and provide food, water, and appropriate medical care for her health, but failed miserably to do any of these things as she hastened her death unlawfully on hospice in a conspiracy with the Defendants ---to seize the trust and her estate with no regard for her life or suffering. Goldberg's discretionary decision consisted of appointing a man with admitted untreated mental health and financial problems who had already revealed serious adverse interests to Muriel's person and estate—to act as Goldberg's agent and make healthcare decisions for Muriel Mintz.

6.     Goldberg violated her fiduciary duty in attempting to delegate non-delegable duties notwithstanding her complete lack of legitimate legal authority to act on Muriel's behalf. Goldberg was an imposter, who interfered with Muriel Mintz' ability to receive appropriate medical care by her chosen medical/durable power of attorney and guardian, BARBARA LATHAM. Goldberg robbed Muriel of the most sacred of fundamental constitutional rights—self determination in the sanctity of one's own body. Well aware that Muriel was shouting to leave the hospital, Goldberg and Defendants conspired to silence Muriel with illegal chemical restraints followed by a 72 hour toxic cocktail of psychotropic drugs and morphine, guaranteed to kill.

7.     Goldberg spent the 2 months+ of her purported appointment terrorizing LATHAM, the legitimate durable/medical power of attorney and chosen guardian in the event of need to coerce Latham into turning over confidential trust documents and private banking information which had no relation to any guardianship of Muriel and which Goldberg had no right to demand, much less threaten arrest "under color of law" if Latham refused. A trust lawyer, Goldberg knew the trust was not properly the subject of her inquiry but still billed over $16,000 hunting down funds of the trust which did not belong to Muriel or her estate. On December 4, 2017, Defendant Michele Goldberg filed an application for Guardian and Attorney fees (Exhibit x) in which she states on page 2:

"*Applicant has performed the attorney services required to <u>defend this guardianship in the amount of $16,789.80</u>, fiduciary services in the amount of $1,325.00, and expenses in the amount of $256.25, and is therefore entitled to the payment of fees and expenses in the total sum of $18,370.83 for the period of September 19, 2017 through December 1, 2017*"(emphasis added, please note her job duties does not include defending the guardianship).

8.     Goldberg wholly failed in utter disregard for Muriel's safety and wellbeing, by failing to order medical records until after her death (to cover up her gross neglect and malfeasance) in favor of scouring financial records because the only thing Defendants were interested in was money. She failed to evaluate whether any imminent danger to Muriel's person or estate existed that could have been protected by injunctive relief and failed to provide any evidence that Muriel's person or estate were at risk, period. Defendants immediately switched gears, filing a trust suit to bust the MURIEL MINTZ FAMILY TRUST by removing BARBARA LATHAM, but have yet to point to any act or omission

of BARBARA LATHAM that violates her duties as trustee under the express language of the trust. All of LATHAM'S actions were authorized by the express terms of the trust. DONALD MINTZ further forfeited his rights as beneficiary of this trust by subjecting it to the general jurisdiction of the probate court after expressly agreeing to mediation or arbitration as the sole remedy. Forfeiture may also be found in Donald's abandonment of his duties as trustee and failure to manage assets or even inquire for close to two years, creating the impression of abandonment, triggering forfeiture[1]

9.      The Texas Legislature has enacted sweeping reforms to guardianship since 2015, with a Bill of Rights for Wards, Alternatives to Guardianship, Supported Decision-Making Agreements, and Supports and Services that would render guardianship unnecessary, mandating clear and convincing evidence that the alternatives to guardianship are not workable prior to nullification of any powers of appointment, but the record reveals that Wood gave mere lip service to the foregoing, much like his unsupported declaration that Muriel Mintz was totally incapacitated by clear and convincing evidence when no evidence existed to justify removing "all rights" as opposed to complying with the law and removing only those rights absolutely necessary to protect her from imminent harm. Tex. Est. Code. 1251.001 et seq.

---

[1] One particular instance in which a temporary guardianship is the proper statutory remedy is to challenge a treatment decision made in the absence of an advance directive by the patient. Tex. Health & Safety Code §166.039. In this instance, the statute authorizes certain relatives to make a treatment decision, including a life-sustaining decision, for an incapacitated patient if there is no medical power of attorney or guardianship in place. §166.039(b). However, should one relative decide to contest another's decision under this statute, §166.039(g) states that such a contestant "must apply for temporary guardianship under [Chapter 1251 of the Texas Estates Code]...."

10.    While calling the proceeding a temporary guardianship, all admitted there was no emergency for Goldberg to do anything until after the holidays. Judge Mike Wood declared Muriel totally incapacitated based on no evidence, removed all rights, and signed an order which contradicted itself, claiming the appointment was both temporary and permanent. None of the mandated procedures were followed to form a valid guardianship.

11.    GOLDBERG misrepresented the facts surrounding her void appointment, telling this court on January 2, 2018 (Dkt 18 p.31 ln 1-2) that she "*I just happened to be sitting in the courtroom, and I was appointed*", the hearing transcript of September 19, 2017, Exhibit 2 p.23 ln 22-25) states: *(phone rings) (Brief pause) (Attorney Michele Goldberg joined the hearing via speaker phone.)* Goldberg didn't "just happened" to call the Court.

12.    The September 19, 2017 Transcript at Page 20 they are in Chambers: Judge wood states it is a continuation of the hearing in 456,059. Then he says he's about to sign an order appointing Michele Goldberg, whose name was never mentioned in the pleadings or previously in any hearing. Judge Wood states: (P.20 ln.12-13)  *"I'm about to sign the order appointing Teresa Goldberg as guardian of the person and estate pending contest*." Teresa Pitre and Michele Goldberg are two different people, neither of whom were included in the application for unidentified third party guardian as mandated, nor was Muriel notified before the appointment. The transcript provides:

> THE COURT:  Here is the thing.  I've got to appoint a guardian now because there are not going to be any juries, perhaps, in this court until I retire in 18 months.  Then  the  phone  rings,  Goldberg  joins  and  says  she  is  not

6

immediately available until after the Jewish holiday and everyone goes on to agree that there is no emergency that would justify appointing a guardian at all and that it can wait.

13.     DONALD MINTZ and his attorneys failed to seize the trust in the ill advised guardianship, resulting in a near instantaneous change in strategy upon Schwager's appearance, challenging Goldberg's standing to demand unrelated trust and personal bank documents via show cause order. MINTZ suddenly filed the trust action to bust the trust by removing Latham, but had one problem.

14.     MURIEL WAS REQUIRED TO BE DECEASED BEFORE THE NOVEMBER 27, 2017 TRUST CASE WAS FILED. Five days later, MURIEL suffers a fall in which DEFENDANTS insist she fractured thoracic vertebrae a second time, the first being 2016 while on a cruise with Scott Mintz. Citing new fractures which Plaintiffs surmise Defendants fabricated to justify morphine administration to hasten Muriel's death, but no x-rays were taken that could have revealed new thoracic fractures of the spine, revealing Defendants' conspired to create a false narrative in their scheme to terminate her life using 2016 x-rays only.

15.     DONALD MINTZ initiated two lawsuits, caused this case to be filed after terminating his mother's life on hospice by fraud, violating criminal statutes both state and federal, and has yet to cease with the fraud and lies. He perjured himself by swearing the MURIEL MINTZ FAMILY TRUST was revocable and belonged to MURIEL to unlawfully seize it from the sole acting trustee since his 2015 abandonment of duties,

resulting in unnecessary attorneys' fees and an 8 month witch hunt against LATHAM that inflicted severe emotional distress, contributing to her inability to continue caring for MURIEL. Absent his malevolent acts, MURIEL would be alive and happy in LATHAM'S care.

16.    His lawyer continued the chaos, filing a knowingly false third party temporary guardianship application which wholly failed to comply with Section 1251 and falsely swore Muriel lived in Harris County, knowing she moved to Brazoria County and the Court had no jurisdiction. Stacy Kelly's sworn statement dated September 11, 2017 attests to her failure to serve Muriel Mintz by constable. If service by constable was unnecessary, the September 11th statement would be meaningless. Defendants tried several unlawful means of obtaining jurisdiction over Muriel by fraud, all of which failed. Citations had been returned "unserved" by a Constable on March 27, 2017, April 7, 2017, May 25, 2017, June 8, 2017, and July 21, 2017.

17.    The guardianship failed before it started for lack of jurisdiction and mandatory venue—Brazoria County in this case. In the hearing of June 27, 2017, (Exhibit 1 page 5) Defendant Wood is informed that Muriel Mintz no longer lives in Harris County but in Brazoria County, whereupon he admits the absence of jurisdiction, stating that if MURIEL resides in Brazoria County, he had no jurisdiction. Latham testified that MURIEL MINTZ voluntarily moved in with her in Brazoria County, Texas on or about March 16, 2017 prior to being served with the application filed by DONALD and abandoned. Muriel did not make an appearance, no facts were allowed to be placed in evidence upon which a judicial determination could be rendered (Doc 1-14 p.14) and no

order for a temporary guardianship was lawfully made.

18.    In the transcript of the Sept. 12, 2017 hearing (Exhibit 2) attorney Mahoney informs Defendant Wood that a Motion to Transfer has been filed because all assets are in Brazoria County. No evidence is ever produced to contradict this fact. After badgering Mahoney, pages 9-12, Defendant Wood again admits absence of jurisdiction before going into a tirade of attacks not supported by any evidence.

**19.**    The result is no guardianship was created, such that LATHAM remained MURIEL'S sole valid legal authority as GOLDBERG interfered with LATHAM'S ability to exercise those rights at the cost of MURIEL'S life via presentation of void court orders instructing medical personnel to deny access, information, records, and the ability to ask questions concerning Muriel's welfare to NELSON OR LATHAM, and throw the out at the first sign of trouble, whereas GOLDBERG purported to delegate fiduciary duties to make decisions regarding MURIEL'S care and life to DONALD MINTZ, who was not once denied access to anything.

### III.    GOLDBERG HAS NO IMMUNITY

20. GOLDBERG has no immunity for conspiring to cause the death of MURIEL MINTZ by dishonest means, concealing the truth while violating federal and state laws on euthanasia, mercy killing and DNR's because: (1) No court of competent jurisdiction was ever constituted[2], (2) No valid proceeding was ever held to appoint Goldberg by any

---

[2] At no time was a court of competent jurisdiction composed. That fact was well-known and was discussed on numerous occasions; In the transcript of the hearing of May 23rd, 2017, (Dkt 7-7) Defendant Wood is informed that the proposed Ward has not been officially served, yet signs an IME while stating his act is an official act hypothecated on a hoped for service of process, "*and*

statutory framework in the code, (3) Neither Goldberg nor Muriel Mintz were present, nor was any evidence introduced or rights observed and (4) No findings were made in the Judge's order by clear and convincing evidence required to set aside powers of appointment and justify nullifying alternatives to guardianship.

### The McAlister Test – Immunity

21.     Defendant cites to Malina v. Gonzales for the McAlester four factor test for judicial immunity. *Malina v. Gonzales*, 994 F. 2d 1121, 1124 (5th Cir. 1993) citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) when this case bears no resemblance to McAlester because Muriel never appeared in Wood's court, no temporary guardianship hearing ever occurred or was noticed to Muriel giving advanced notice of the proposed guardian, stating the emergency for which temporary guardianship is unavoidable. Muriel was never served with citation, depriving the court of all jurisdiction to enter a valid order over her, rendering this case inapplicable.

22.     No witnesses or evidence, much less substantial evidence, was introduced as attorneys met with Wood in chambers without Muriel. Goldberg was not physically present as required. No findings that alternatives to guardianship would not work (by clear and convincing evidence) were made nor were existing powers of appointment granted to LATHAM revoked. Muriel did not have the competent assistance of counsel by an individual with knowledge of her disabilities competent to assist her to meaningful

---

*I'll say before a month from today, roughly, around June 23rd. I suspect he'll do it before then*." (Dkt 7-7, p. 7 ln. 12-16).

participate and evaluate alternatives to guardianship and the supports and services needed to avoid guardianship, nor was there evidence presented of Dr. Edward Poa, whose credentials, qualifications, methodology, reliability, and/or bias remains unknown, which does not pass the scientific reliability standard of Daubert vs. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993)(announcing national standard under Texas/Federal Rule of Evidence 702 to admit expert testimony or opinions)[3].

23.    MURIEL'S attorney did not bother to even answer with a form general denial that was clearly not written to apply to the case at hand, filed November 27, 2017—two months "after" Muriel was declared "incapacitated" and placed under a guardianship order, in which Defendant Teresa Pitre states that she represented "the decedent," prior to MURIEL'S actual death.

24.    GOLDBERG acted in the entire absence of jurisdiction and actually

---

[3] Rule 702--places appropriate limits on the admissibility of purportedly scientific evidence by assigning to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to "scientific . . . knowledge," since the adjective "scientific" implies a grounding in science's methods and procedures, while the word "knowledge" connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds. P9-12. The Rule's requirement that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility. Pp. 9-12.

Faced with a proffer of expert scientific testimony under Rule 702, the trial judge, pursuant to Rule 104(a), must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue. Pp. 12-15. Only after satisfaction of Daubert, is the evidence allowed to be admitted. The result is there was NO EVIDENCE that MURIEL was incapacitated.

conspired with DEFENDANTS to obtain jurisdiction by fraud--after WOOD repeatedly admitted he lacked jurisdiction. "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments[.]'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982) (quoting Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 156 (1978)).

25.     GOLDBERG would have this Court believe that probate judges are absolutely immune for acts constituting crimes and torts, when the Texas Legislature has chosen to protect the public to a greater degree than that seen in federal precedent via the enactment of Tex. Est. Code 1201.001-003 et seq. Section 1201.001 makes the probate judge liability for failing to use reasonable diligence to determine whether a guardian is performing all of the duties required of the guardian that relate to the guardian's ward. The judge must also conduct an annual review of each guardianship bond to ensure the bond is adequate to compensate the ward for harm caused to his person or estate by the judge's failures. Tex. Est. Code 1201.002 et seq. As the ultimate guardian, the probate judge is the ultimate fiduciary. As such, he or she is held to a high standard in fulfilling duties to protect the ward's estate and person—the entire purpose for guardianship to exist.

Sec. 1201.003.  provides for probate judge's liability on their bonds, JUDGE'S LIABILITY.  **A judge is liable on the judge's bond to those damaged if damage or loss results to a guardianship or ward because of the gross neglect of the judge to use reasonable diligence in the performance of the judge's duty under this subchapter.**

26.     The judge was advised December 12, 2017 and afterwards that Goldberg was

unqualified to read medical records, lacked information about Muriel's history to provide informed consent, such that Goldberg's medical decisions regarding Muriel constituting criminal medical batteries.

27.    Judge Wood was advised that Goldberg was blocking and banning NELSON AND LATHAM'S access to information, documents, personnel, doctors, and punishing them by denying them access to Muriel even by phone for daring to ask for blank forms. Plaintiffs' counsel demanded that the Judge enjoin GOLDBERG from this dangerous irrational behavior on the basis she was putting Muriel at risk for imminent death or serious bodily injury, questioning whether this guardianship sought to protect Muriel or Michele? The court had sufficient notice to investigate and refused to even confirm Goldberg reviewed Muriel's medical records, stating he was unfamiliar with the ADA, asking counsel what it mandated for him to do, and repeatedly saying "I don't know what you're talking about" when counsel warned Goldberg was committing criminal medical batteries by the inability to provide informed consent. Wood acted in reckless disregard for Muriel's life.

28.    GOLDBERG admitted to LATHAM the first visit to her home her intention to "leave MURIEL'S medical decisions" to LATHAM, given LATHAM'S extensive nursing career and GOLDBERG'S complete lack of knowledge of such things. She had no medical records, or knowledge of MURIEL'S history and blocked the only person who could provide informed consent by knowing what she didn't and having the authority to act.

## IV. <u>42 USC 1983 LIABILITY IN CONSPIRACIES</u>

29.     Section 1983 provides a remedy if the deprivation of federal rights takes place "under color of any statute, ordinance, regulation, custom, "state action" requirement. Lugar, 457 U.S. at 929 (internal quotation marks and citations omitted). GOLDBERG'S characterization as her role as central to the entire operation of the court reveals she was acting "under color of state law" as is needed. Wood has no immunity by acting in the absence of all jurisdiction, violating obviously known constitutional rights in bad faith, and by virtue of Tex. Est. Code 1201.003 (setting liability on Judge's bond at $500,000 for harm to person or estate). Thus, Goldberg has none either. If Goldberg were immune, she would not have been ordered to obtain a $250,000 bond.

30.     Under Federal precedent, absolute judicial immunity does not extend to acts taken in the absence of all jurisdiction or those violating obvious Constitutional rights. *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985), cert. denied, 474 U.S. 1101 (1986). A judge has no immunity (1) for actions taken outside of his judicial capacity, or (2) for actions that are judicial in nature, but occur in the complete absence of all jurisdiction. *Mireles v. Waco*, 112 S.Ct. 286, 288 (1991). *Malina v. Gonzales*, 994 F. 2d 1121, 1124 (5th Cir. 1993) citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) Muriel Mintz was never served and never appeared before Judge Wood's Court, rendering every act he took in the absence of all jurisdiction and outside of his judicial capacity for which there is no immunity.

31.     The Supreme Court set forth a two-part test for determining whether the

deprivation of a federal right could fairly be attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," and "[t]his may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. at 937.

32.     **A private individual may be deemed to have acted under color of law when they are involved in a conspiracy or participate in a joint activity with other state actors**. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970).  This is true even if they conspired with the judge who is otherwise immune. The 5th Circuit held that even if a judge is entitled to absolute immunity, the state actors, here the attorney defendants, who acted in concert with the judge, may still be held liable under § 1983 if they are jointly engaged with [the] state official[] in the challenged action." Dennis v. Sparks, **449** U.S. 24,27-28 (1980).  GOLDBERG insists she is the equivalent of a probate judge, rendering her an obvious state actor "under color of law' given her lack of "actual" authority, using the appearance of actual authority to violate MURIEL'S rights. She is not entitled to any immunity derivative or otherwise by virtue of conspiring with other state actors to violate MURIEL's rights under 42 USC 1983.

33.     MICHELE GOLDBERG conspired with the DEFENDANTS (a) to seize the MURIEL MINTZ FAMILY TRUST by slandering and maligning BARBARA LATHAM, sole acting trustee, to intimidate, threaten and coerce her to abandon the trust and surrender

Muriel to Harris County, (b) participated in months of harassment via contrived false reports to APS and the police seeking constant welfare checks of MURIEL. The fraud is evident in the proposal that DONALD MINTZ would stop making welfare checks to the police if BARBARA would agree to allow DR. POA to examine MURIEL at her home and prepare a report on her capacity.

34.    GOLDBERG acted in express violation of her duties as purported temporary guardian and fiduciary by failing and refusing to provide adequate medical care, food, water, and protection to MURIEL in favor of hastening death through an illegal hospice scheme for profit of all participating entities and persons. GOLDBERG had no legal authority[4] to consent to MURIEL'S death via hospice, for which she attempted to disclaim liability by delegating a non-delegable duty to protect MURIEL and make appropriate

---

[4] Sec. 1151.051.  GENERAL POWERS AND DUTIES OF GUARDIANS OF THE PERSON.
(a)  The guardian of the person of a ward is entitled to take charge of the person of the ward.
(b)  The duties of the guardian of the person correspond with the rights of the guardian.
(c)  A guardian of the person has:
> the right to have physical possession of the ward and to establish the ward's legal domicile;
> the duty to provide care, supervision, and protection for the ward;
> the duty to provide the ward with clothing, food, medical care, and shelter;
> the power to consent to medical, psychiatric, and surgical treatment other than the inpatient psychiatric commitment of the ward;
> on application to and order of the court, the power to establish a trust in accordance with 42 U.S.C. Section 1396p(d)(4)(B) and direct that the income of the ward as defined by that section be paid directly to the trust, solely for the purpose of the ward's eligibility for medical assistance under Chapter 32, Human Resources Code; and
> the power to sign documents necessary or appropriate to facilitate employment of the ward if:

16

healthcare decisions to a person MICHELE knew intended to hasten MURIEL'S death unlawfully.

35.     GOLDBERG participated in the scheme to falsify MURIEL'S qualification to receive hospice care, after nefariously denying her life sustaining medications for congestive heart failure, causing her lungs to fill with fluid, and denying food and water based upon a fabricated swallowing problem which she knew was induced (if at all) by Morphine used to hasten death. Morphine is known to cause swallowing difficulty, breathing problems and induce a coma in 72 hours in an intentional death process deemed "terminal sedation." DEFENDANTS began starving/dehydrating and denying appropriate medications to MURIEL in early December, 2017 to create the conditions of death allowing her admission to hospice. This isn't palliative care, but homicide.[5]

36.     Throughout the harassment, abuse, and slander of LATHAM concerning financial matters to which she had no standing to insert herself and demand information, Goldberg all the while insisted to the Court her neutrality. Medical records reveal that she was anything but neutral, attempting to delegate the non-delegable duty she assumed, unlawfully interfering with the legally authorized medical power of attorney concerning

---

[5] MURIEL MINTZ was held against her will and subjected to illegal chemical restraints to stop her from screaming to leave St. Luke's Hospital, constituting false imprisonment because GOLDBERG and MINTZ had no authority to hold her against her will.  MURIEL was found shouting to leave the hospital or asked to leave the hospital or tried to remove medical equipment from her arm, making her desire to reject treatment well known and unambiguous.  The solution was rendering her in an "altered mental status" so that DONALD MINTZ could step in while MURIEL was drugged and unaware he was consenting to euthanasia on hospice.

MURIEL'S healthcare such that hospitals, doctors, and hospice deferred to her "orders" as if issued by a court, rather than respecting the medical power of attorney, never validly revoked by any court order.

37.     To avoid liability for criminal medical battery by virtue of her inability to provide informed consent for MURIEL'S healthcare decisions, GOLBERG executed a letter to all medical personnel treating MURIEL, purporting to authorize DONALD MINTZ to act as her "agent" and make medical decisions for MURIEL MINTZ in her absence. The letter itself reveals the conspiracy. Documents produced in response to subpoena reveal that before LATHAM AND NELSON ever appeared to visit their mother, hospitals and medical personnel were advised to throw them out at the least sign of trouble, characterizing them as troublemakers. This resulted in St. Luke's contacting Risk Management to visit LATHAM AND ESTELLE the first night they visited, December 5, 2017, to tell them to leave the premises for merely asking for a blank HIPPAA form.

38.     St. Luke's had the valid power of attorney granted to LATHAM for MURIEL'S medical care and decisions, leading a St. Luke's physician to question whether the medical power of attorney needed to be consulted. The Texas Health and Safety Code mandates that any facility receiving a medical power of attorney—place a copy in the patient's record and ensure all treating professionals are aware.

39.     GOLDBERG acted under color of state law at the direction of the Judge to violate MURIEL'S rights under the U.S. Constitution and every provision of the Texas Estates Code governing the appointment of a person as temporary guardian or otherwise. GOLDBERG'S actions constitute a deprivation of procedural and substantive due process

in violation of the 14th Amendment to the U.S. Constitution and due process guaranteed by the Texas Constitution.

40.      MURIEL MINTZ never received notice 10 days prior to any hearing for temporary guardianship or even the name of the person proposed to take over her life, much less any notice [6]as to what emergency DEFENDANTS cited to justify their actions. The lack of notice, lack of petition naming MICHELE as proposed guardian, Michele's failure to attend, Muriel's failure to be present with no opportunity to meaningfully participate and defend her choices of alternatives to guardianship, combined with the lack of evidence, failure to even identify an emergency, but disclaiming one—proves this guardianship was never valid.[7] Almost none of the mandatory statutory prerequisites to form a valid guardianship were met.

---

[6] Sec. 1251.006.  SCHEDULING OF HEARING.

   1. The Code mandates the hearing be held within 10 days of the application's filing, which makes sense where the circumstances present an actual emergency. The code permits one extension for 30 days, but the original application for guardianship was filed March 13, 2017 with a third party petition filed in April of 2017. This hearing did not occur for 5+ months, clearly violating this Section of the code.  Added by Acts 2011, 82nd Leg., R.S., Ch. 823 (H.B. 2759), Sec. 1.

[7] Sec. 1251.003.  APPLICATION.  (a)  A sworn, written application for the appointment of a temporary guardian shall be filed before the court appoints a temporary guardian.

    (b)  The application must state:

            (1)  the name and address of the person who is the subject of the guardianship proceeding;

            (2)  the danger to the person or property alleged to be imminent;

            (3)  the type of appointment and the particular protection and assistance being requested;

            (4)  the facts and reasons supporting the allegations and requests;

            (5)  the proposed temporary guardian's name, address, and qualification;

41.     The Code mandates all Court business be conducted in open court, but the Judge called GOLDBERG with the other attorneys, by phone, from chambers on the 19th of September, 2017 to arrange for the ex parte third party guardianship, emphasizing there would be no trials until after he retired in 18 months.  This is not even close to due process or equal protection, but disability and age discrimination in which MURIEL was targeted for hospice to steal her estate.

42.     Sections 1251.008 and 1251.009 give the proposed ward the RIGHT TO BE PRESENT, present evidence, be represented by an attorney, receive prior notice, confront witnesses, while mandating that the proposed temporary guardian be present for appointment, neither of which were true.  **In fact, the Code prohibits the appointment UNLESS THE TEMPORARY GUARDIAN proposed APPEARS in court**.[8]

43.     For the foregoing reasons, the Court must deny GOLDBERG'S motion to dismiss, filed with unclean hands and amidst misrepresentations of known fact to this Court.

Respectfully Submitted,

---

(6)  the applicant's name, address, and interest; and

(7)  if applicable, that the proposed temporary guardian is a private professional guardian who is certified under Subchapter C, Chapter 155, Government Code, and has complied with the requirements of Subchapter G, Chapter 1104.

[8] Sec. 1251.009.  APPEARANCE BY PROPOSED TEMPORARY GUARDIAN IN CERTAIN CIRCUMSTANCES.  If the applicant for a temporary guardianship is not the proposed temporary guardian, a temporary guardianship may not be granted before a hearing on the application required by Section 1251.006(b) unless the proposed temporary guardian appears in court.

**SCHWAGER LAW FIRM**

*Candice Schwager*
_____

Candice L Schwager
Texas Bar No. 24005603
 Federal I.D. 30810
1417 Ramada Drive
Houston Texas 77062
Tel: 832.315.8489
Fax: 713.456.2453
candiceschwager@icloud.com
 http://www.schwagerfirm.com

**ATTORNEY FOR BARBARA LATHAM
AND ESTELLE NELSON, HEIRS OF THE
ESTATE OF MURIEL MINTZ, DEC.**

**<u>CERTIFICATE OF SERVICE</u>**

I, Candice Schwager, hereby certify that on the 28th day of March, 2018 at 5:30 a.m. all parties were served as mandated by the federal pacer e-file system and that leave of court is requested due to technical problems with counsel's computer which delayed the filing by 5-6 hours by no fault or neglect of Schwager, but circumstances beyond her control.

*Candice Schwager*
_____
Candice L Schwager