## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BARBARA LATHAM, Individually and as | § | |
| Heir and Personal Representative of the Estate | § | |
| of MURIEL MINTZ and ESTELLE NELSON, | § | |
| Individually and as Heir to the Estate of | § | |
| MURIEL MINTZ | § | |
| | § | |
| VS. | § | |
| | § | CASE NO. 4-16-CV-03875 |
| | § | HON. VANESSA GILMORE |
| JUDGE MIKE WOOD, Individually and | § | |
| Official Capacity as Statutory Probate Judge | § | |
| Harris County, Texas, MICHELE GOLDBERG | § | |
| Individually & Officially, HARRIS COUNTY, | § | |
| TEXAS, TERESA PITRE, Individually & Offic, | § | |
| DONALD MINTZ, HOUSTON HOSPICE | § | |
| STACY KELLY, ST. LUKE'S EPISCOPAL | § | |
| HOSPITAL, THUY TRIN, DOES 1-100 | § | |

## TABLE OF CONTENTS

I.    Nature and Stage of proceedings…………………………………………3

II.   Standard of Review……………………………………………………….5

III.  Limits on Judicial Immunity ……………………………………………..9

      A.    Absence of all jurisdiction……………………………………….9

      B.    No immunity for Declaratory Judgment or Attorneys' Fees………11

      C.    Violation of Obvious Constitutional right…………………………12

      D.    Liability on Judicial Bond 1201.003……………………………....14

IV.   Procedural Due Process …………………………………………………..17

V.    Sham proceedings to circumvent mandates.............……………………19

VI.   Request to deny dismissal for defendant's unclean hands……………....21

# <u>LEGAL AUTHORITIES</u>

Alfred L. Snapp & Son v. Puerto Rico,  Barez, 458 U.S. 592 ............................ 18

*Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* ........................................... iv

*Baldwin v. Hale*, 68 U.S. (I Wall.) 223 ................................................. 13

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ........................................ iv

*Bell v. Burson*, 402 U.S. 535 ................................................................ 13

*Boddie v. Connecticut*, 401 U.S. 371 ...................................................... 13

Cipollone v. Liggett Group, Inc., 505 U.S. 504 .................................................... 15

Cleveland Board of Education v. Loudermill, 470 U.S. 532 .......................... 15, 16

*Data Gen. Corp. v. Cnty. of Durham, 545 S.E.2d 243, 245-46 (2001)* .................. vi

First Am. Title Co. v. Devaugh, 480 F.3d 438 ...................................................... v

*Fuentes v. Shevin,* 407 U.S. 67 .......................................................... 13

Geier v. Amer. Honda Motor Co., 529 U.S. 861 ................................................ 15

*Goldberg v. Kelly*, 397 U.S. 254 ........................................................... 13

Guardianship of B.A.G., 794 S.W.2d 510 ..................................................... 11

Hawaii v. Standard Oil Co. of Ca., 405 U.S. 251 ............................................ 18

Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013)...... 18

*Hunter  Douglas,  Inc.  v.  Harmonic Design, Inc., 153 F.3d 1318, 1325* ............. 17

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ................................ v

Livingston vs. Guice, Jr. No. 94-1915 (4th Cir. 1994)

*M.D. bnf Stukenberg vs. Greg Abbott,* 152 F.Supp.3d 684  (S.D. Tex.2015)affirmed
by Cause 18-40057; (5th Cir. 2016)(per curium)………………………………………….

*Malina v. Gonzales*, 994 F. 2d 1121 ................................................. 4, 5

*Mathews v. Eldridge*, 424 U.S. 319 ....................................................... 3

*McAlester v. Brown*, 469 F.2d 1280 .......................................................

Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey, 419 F.3d 462

Owen vs. City of Independence 445 U.S. 622 (1980)

*Pulliam vs. Allen 466 U.S. 522 (1984)*………………………………………………….

Resnick v. AvMed, Inc., 693 F.3d 1317, 1321–22 (11th Cir. 2012) .........................

Ruth Bauer vs. the State of Texas and Rory Olsen, No. 02-20412; (5th Cir. 2003)..

*Stump vs. Sparkmanv, 435 U.S. 349, 356 (1978);*
*Sanchez vs. Swyden, 139 F.3d 464, (5ᵗʰ Cir. 1998)*
Vitek v. Jones, 445 U.S. 480 ................................................................. 15
Williams v. Brooks, 945 F.2d 1322 ........................................................

42 U.S.C. § 19813.........................................................................
42 U.S.C. § 1983..........................................................................
42 U.S.C. § 1988..........................................................................
Federal Rules of Civil Procedure 12(b)(1)...........................................
Federal Rules of Civil Procedure 12(b)(6)...........................................
Federal Rules of Evidence 201 .........................................................
42 U.S.C. 12101, 12202, 12132, et seq., Americans with Disabilities Act ADA......
29 U.S.C. 794, Section 504 of the Rehabilitation Act of 1973.......................
Tex. Civ. Prac. & Rem. Code 71.004 et seq ..........................................
TEX. EST. CODE 1201.003 (Judicial Bond)..........................................
TEX. EST. CODE § 1251.003(b)(2)...................................................
TEX. EST. CODE § 1251.006(b)......................................................
TEX. EST. CODE § 1251.006(c),.....................................................
TEX. EST. CODE § 1251.008.........................................................
TEX. EST. CODE § 1251.010(a) and (b)..............................................
TEX. EST. CODE §§ 1251.051−.052 ...................................................
TEX. EST. CODE §1251.151 .........................................................

## I.   <u>NATURE AND STAGE OF PROCEEDINGS</u>

1.      PLAINTIFFS, BARBARA LATHAM AND ESTELLE NELSON filed this lawsuit for deprivation of fundamental Constitutional rights under "color of law" resulting in the wrongful death by means other than natural death, of Muriel Mintz, their mother. Plaintiffs' claims are federal pursuant to 42 U.S.C. 1981, 1983 and 1988 and Plaintiffs have standing to sue for wrongful death and survival on behalf

of the estate without reference to Latham's appointment as personal representative by filing within 90 days of death. Tex. Civ. Prac. & Rem. Code 71.004 et seq.[1]

2.    PLAINTIFFS were granted the right to begin depositions and discovery by this Court on January 10, 2018 by Motion to Perpetuate Testimony, (Dkt. 8-1), explaining to the Court that they would have dismissed and refiled later but for Defendants' efforts to obstruct access witnesses and documents to conceal the circumstances surrounding Muriel Mintz' death. After 3 to 5 requests for deposition dates from various Defendants, Plaintiffs remain unable to obtain Defendants' cooperation to obtain basic information so that Plaintiffs' final complaint can be completed with necessary parties and facts. While refusing to supply information not equally available to PLAINTIFFS, Defendants continue propounding multiple Rule 12(b)(6) and/or Rule 12(b)(1) MOTIONS TO DISMISS –alleging PLAINTIFFS have failed to provide sufficient details to state a claim. PLAINTIFFS pray the Court deny all dismissals until Defendants comply with the Court's January 10, 2018 order to permit discovery and depositions by Plaintiffs.

---

[1] Defendants transferred the probate matter to Harris County Probate Court No. 2 in a transparent attempt to deprive them of standing to sue in this matter by ensuring Judge Wood had the ultimate discretion in the appointment of a personal representative, who would ordinarily have the exclusive right to sue—but for Tex. Civ. Prac. And Rem. Code 71.004 et seq, expressly granting Barbara and Estelle this right as Heirs by virtue of their immediate lawsuit and Donald Mintz' conflict of interest.

3.    Defendants have filed RULE 12b(6) and 12b(1) Motions to which PLAINTIFFS have filed responses, with JUDGE MIKE WOOD AND HARRIS COUNTY'S MOTIONS among the final Motions currently pending. A pre-trial conference is scheduled for April 6, 2018 at 1:30 p.m. The parties completed and filed their Joint Discovery Case Management Plan and are filing Initial disclosures.

4.    Plaintiffs file this response to defendant, HON. JUDGE MIKE WOOD'S MOTION TO DISMISS. (Dkt.28) Wood's primary defense is judicial immunity, which is not absolute, but qualified immunity contingent upon the complained of act being performed in his official adjudicatory capacity where Judge Wood has subject matter jurisdiction to act and does not violate clear Constitutional rights with no objectively reasonable basis. Where the Legislature deliberately chose to partially abrogate immunity by making probate judges liable on judicial bonds for harm caused to proposed wards / wards and/or estates, immunity is waived to the amount of the judicial bond. Tex. Est. Code. 1201.003.  Judge Wood is not immune because;

   a. *Wood acted in the absence of all jurisdiction*
   b. *No immunity exists for declaratory relief or attorneys' fees under 42 USC 1988 under Pulliam vs. Allen*
   c. *Wood violated clear constitutional rights – 14th Amendment due process equal protection*
   d. **Woods acted grossly negligent in deliberately difference to imminent danger of serious bodily injury and death to Muriel Mintz**
   e. *Wood is liable on his judicial bond, pursuant to Tex. Est. Code 1201.003 for gross neglect in failing to protect Muriel Mintz for*

*wrongful death occasioned through violations of the ADA and 14th Amendment*

**5.** The Texas Legislature partially abrogated judicial immunity with respect to probate judges, by mandating they obtain judicial bonds to compensate victims for injuries to proposed wards/wards and/or estates by a judge's failure to exercise diligence in overseeing the conduct of guardians (negligent supervision) and gross neglect. Section 1201.003 renders Wood liable on his bond to the limits of $500,000 for harm to the person and estate of Muriel Mintz, for failing to exercise reasonable diligence to intervene and stop MICHELE GOLDBERG from engaging in acts/omissions which counsel warned created a risk of imminent bodily injury or death to MURIEL MINTZ.

## II.  STANDARD OF REVIEW

6.     When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc., 693 F.3d 1317, 1321–22 (11th Cir. 2012)*. "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

7.      The standard of appellate review for a motion to dismiss pursuant to Rule 12(b)(6) or 12(b)(1) is de novo, *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007); Whether or not a court has subject matter jurisdiction over a party is a question of law reviewed de novo; thus, *Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1325, 47 U.S.P.Q.2d 1769, 1772 (Fed. Cir. 1998)*.

8.      On a Rule 12(b)(1) Facial Attack the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013*).

9.      In contrast to a facial attack on subject matter jurisdiction, a Rule 12(b)(1) factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits are considered." *Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)* (internal quotation marks omitted).

10.     Dismissals pursuant to Rule 12(b)(6) are only appropriate where "it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 78 S.Ct. 99, 102 (1957).* In making this determination, the court accepts as true all allegations contained in the

plaintiff's complaint and all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Kaiser Aluminum & Chem. Sales Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).* Latham and Nelson have standing to pursue this civil rights action for wrongful death and survival under 42 U.S.C. 1981, 1983, and 1988 as well as Tex. Civ. Prac. & Rem. Code 71.004 et seq.[2]

## III. LIMITS OF JUDICIAL IMMUNITY

*11.*     Defendant would have this court assume that; 1) a Court of competent jurisdiction was duly constituted, 2) a Guardianship was properly established with jurisdiction over the person and estate of Muriel L. Mintz, and 3) that statutory mandates to the formation of a guardianship were met, and 4) Plaintiffs' complaints are subject to absolute judicial immunity, when none of the foregoing is true. Judge Wood failed to constitute a court of competent jurisdiction serving citation in

---

[2] **Sec. 71.004.  BENEFITTING FROM AND BRINGING ACTION.**

(a)  An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse**, children**, and parents of the deceased.

(b)  The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.

(c)  If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals.

Sec. 71.021.  SURVIVAL OF CAUSE OF ACTION.  (a)  A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.

(b)  A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person.  The action survives against the liable person and the person's legal representatives

accordance with Tex. Est. Code 1053.103.

> *Sec. 1051.103. SERVICE OF CITATION FOR APPLICATION FOR
> GUARDIANSHIP. (a) The sheriff or other officer shall personally
> serve citation to appear and answer an application for guardianship
> on:  (1) a proposed ward who is 12 years of age or older;*

*12.*     There is no immunity for acts taken in the clear absence of all jurisdiction.

Moreover, certain acts are deemed foreign to the office of judge for which no

immunity could possibly exist**.** *Pulliam vs. Allen, 486 U.S. 522, 543-544j (1984).*

Immunity attaches to the "office" not the "person," mandating that judicial immunity

be limited to official adjudicatory acts over which the Judge has jurisdiction, rather

than acts or omissions committed in the absence of all jurisdiction.

## A. <u>ABSENCE OF ALL JURISDICTION</u>

*13.*     Defendant would have this court assume that; 1) a Court of competent

jurisdiction was duly constituted, 2) that a Guardianship was properly established,

3) that Muriel Mintz was a valid subject of said Guardianship Proceeding, and 4)

that all parties were present, actively participating, and properly represented. None

of these things are true.  At no time was a court of competent jurisdiction composed.

All actions taken in the complete absence of jurisdiction are not subject to judicial

immunity.

*14.*     Not one action taken by Wood regarding Muriel Mintz was "judicial"

because (Dkt 7-7).  Muriel was never served by constable or sheriff as mandated by

Tex. Est. Code 1051.103--admitted by Stacy Kelly by sworn statement dated September 11, 2017. Kelly attempted to deceive this Court in falsely stating the Code authorized service of Guardianship Applications by private process servers on proposed wards of the State, when this is false. Judge Mike Wood admonished Kelly repeatedly regarding invalid service attempts that did not satisfy the statutory mandate, saying "you know you can't do that," which Kelly acknowledged, citing the Sheriff and Constables' refusal to serve in Brazoria County—the first indication that venue lied in Brazoria County and transfer would have resolved the problems. Wood knew at all times that service was not legally effected upon Muriel Mintz but chose to proceed by hypothecating on future service when he said: "*and I'll say before a month from today, roughly, around June 23rd. I suspect he'll do it before then*." (Dkt 7-7, p. 7 ln. 12-16). On June 27, 2017, (Dkt 35-12, page 5)

*15.*      Muriel Mintz decided to move in with daughter and durable/medical power of attorney, BARBARA LATHAM when she found out DONALD MINTZ had plans to force her into a nursing home, which she adamantly objected to. Muriel regularly spent multiple days at a time at Latham's Pearland home and Latham prepared a room for her mother, making MURIEL'S March 13TH move a smooth transition, given Muriel voiced her preference to live with Barbara years prior to 2017 once she was not able to live independently.

16.     Latham was designated durable/medical power of attorney for Muriel in 2006 and served without incident since then, such that Latham had the power and right to move her mother independent of any court or Donald's agreement. Latham testified; nevertheless, that she agreed to allow her mother to move in with her because her mother indicated long before the guardianship her preference to live with Latham over nursing home care.

17.     After admitting several times that he lacked jurisdiction if Muriel moved to Brazoria County, Wood became fixated on the accountings and money and ignored his lack of jurisdiction entirely as he proceeded signing void orders.   Wood unambiguously stated:

> **THE COURT: If she's not here, then I have no jurisdiction over this case. (May 23, 2017).**

18.     Latham Testified that the entirety of Muriel's estate was managed in Brazoria County, with Latham her medical/durable power of attorney, designated guardian in the event of need, agent for HIPPAA and disposition of remains. June 26, 2017, Exhibit 1, p. 5. Wood reminds everyone present that no juries are available and begins with more personal attacks on Latham and counsel, stating:

> *THE COURT: If I don't have jurisdiction, they don't need to. Right? They can just walk off and steal her. You might want to contact ..the DA [in Brazoria County and Harris County],*

19.    Muriel Mintz moved to Brazoria County, Texas to live with her daughter and trusted power of attorney for healthcare and finances, BARBARA LATHAM. Latham's 30-year career as a registered nurse along with Estelle Nelson's expertise in geriatric home health care made this move a wise choice Muriel confronted her son in extreme emotional distress at his deception, demanding to know why he was trying to have her declared "incapacitated." No witness ever testified to the contrary, yet Wood repeatedly accused Latham of "stealing Muriel" to make him lose jurisdiction when Wood never had jurisdiction over Muriel:

> THE COURT: Now you've taken her out of the County. You've said, Judge, you've lost jurisdiction. We win. We win. We have her...p. 8

> THE COURT: What You're saying then, I can't hear this case. We won. We grabbed her before they managed to get her served with a new lawsuit asking for an independent third party. We managed to get her out of the County so there's not going to be any hearing in Court 2. That's what you're saying.

## B. NO IMMUNITY FOR ATTORNEYS FEES & DECLARATORY RELIEF

20.    Plaintiffs submit that Wood has no immunity for all of the reasons stated herein, and particularly the bond provided by Tex. Est. Code 1201.003. But in no evident is Wood immune for prospective injunctive relief, declaratory judgment, or attorneys' fees under 42 U.S.C. § 1983 and 1988. *Pulliam vs. Allen, 486 U.S. 522,*

*543-544j (1984).* Plaintiffs have pled injunctive, declaratory relief and attorneys' fees. Judicial Immunity is no bar to the award of Attorneys' fees incurred in the prosecution of civil rights deprivation claims under 42 U.S.C. § 1983, 1988 (Civil Rights Attorneys' Fees Awards Act).

21.    The Legislative History of 42 U.S.C. § 1988 confirms Congress' intent that attorneys' fees be available even when damages would be barred or limited by judicial immunity doctrines. *Pulliam vs. Allen, 486 U.S. 522, 543-544j (1984).* The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, makes clear Congress' intent that attorneys' fees be available in any action to enforce 42 U.S.C. § 1983, with the Legislative History of Section 1983 confirming Congress' intent that an award of attorneys' fees be made available even when damages would be barred or limited by immunity doctrines. *Pulliam vs. Allen, No. 82-1432 (1984).*

## C. VIOLATIONS OF CLEAR CONSTITUTIONAL RIGHTS

## ACTING IN OBJECTIVELY UNREASONABLE MANNER

22.    Judicial immunity does not exist where a judicial officer violates clear constitutional rights acting in an objectively unreasonable manner. have Wood deprived Muriel Mintz of clear constitutional rights of due process and equal protection of the law via the 14th Amendment to the U.S. Constitution. Wood's conduct was objectively unreasonable throughout the "proceedings" he refused to

transfer while acknowledging he had no jurisdiction. *Sanchez vs. Swyden, 139 F.3d 464, (5ᵗʰ Cir. 1998)*(holding that defendants were not entitled to qualified immunity in a 1983 case where the plaintiff was deprived of a clearly established constitutional right and a material fact issue was in dispute as to whether the Defendants' actions were objectively reasonable).

23.    *The 5th Circuit ruled in M.D. b/n/f Stukenberg vs. Greg Abbott, et al;*, that permanent wards of the State have a 14ᵗʰ Amendment right to be safe while in government custody and to appropriate medical care. *2:11-cv-84 (S.D. Tex. 2015*). The panel also ruled that Judge Jack would have abused her discretion by abstaining from jurisdiction over Texas' failed foster care system of permanent wards because their 14ᵗʰ Amendment rights were being violated by the State of Texas' neglect in failing to protect them from harm and providing adequate medical care.. Equal protection dictates these same rights must be afforded elderly temporary or permanent wards.

### D.    LIABILITY ON JUDICIAL BOND

24.    Probate Judges are entitled to qualified immunity only, prefaced upon the exercise of reasonable diligence in the supervision of guardians' conduct protecting wards and not engaging in gross neglect, resulting in damage to a ward or her estate. Qualified Immunity is not applicable to actions taken in the complete absence of

jurisdiction, for which no immunity exists, nor does it shield clear violations of Constitutional rights by objectively unreasonable actions, such as here.

25.     In passing 1201.003, the Texas Legislature voted to hold probate judges liable for harm caused to wards and their estates to the extent of their bonds. Tex. Est. Code 1201.003. The Texas Estates Code renders a probate judge's qualified immunity contingent upon the exercise of reasonable diligence in performing duties of oversight to protect the ward and estate from harm. Gross negligence by a judge that causes harm to a ward or estate is subject to liability on judicial bonds pursuant to Tex. Est. Code. 1201.003 (Limiting personal liability on judicial bond to $500,000 for harm to ward or estate by gross neglect).

26.     Sec. 351.354 of the Texas Estates Code contains the standard for liability on the bond, stating that a probate judge is liable to those damaged if damage or loss results to an estate administered from the **gross neglect of the judge** to use **reasonable diligence in the performance of the judge's duty** under this subchapter. Wood was warned of the risk of imminent bodily injury or death to Muriel via Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction 12/12/17, email to the court 12/18/17 and via notification of intent to file for injunctive relief in federal court on 12/21/17—to provide him notice and the chance to protect Muriel. He wholly failed to protect her, which was his sole duty.

Goldberg persisted in blocking Latham and Nelson's access to personnel, records, information, and Muriel, sealing her fate.

27.    Wood was grossly negligent in failing to respond to Plaintiffs' pleas for intervention to prevent seriously bodily injury or death to MURIEL MINTZ, deceased as a result of Goldberg's bans on Muriel's R.N. daughters as she deliberately interfered with the legitimate medical power of attorney's ability to save Muriel's life in favor of scheming with Donald to put Muriel on hospice with no legal authority to do anything, but protect her.

28.    Wood knew or should have known that Goldberg did not have Muriel's medical records given he affirmatively represented that Goldberg had them, when Goldberg did not bother ordering Muriel's records until almost February after she died, and Goldberg was being sued. Goldberg never once contacted Dr. Ronald Buescher, Muriel's primary care doctor. Wood was warned that Goldberg was incapable of providing informed consent—criminal medical battery and did nothing.

29.    Wood should have known Donald Mintz is a deceitful liar whose mission was seizing Muriel's estate by any means necessary. Teresa Pitre concluded that Donald was a "piece of work" and had no cause for appointment. Wood was asked to force Goldberg to stop interfering with Plaintiffs' access warning Muriel's life was in danger and proposing a few written prohibitions against Goldberg for

Muriel's protection—which he refused. Wood refused to ORDER Goldberg or Kelly in writing to stop violating Muriel and Latham's rights and verbal admonitions to "do her best" accomplished nothing.

30. Wood admitted a lack of familiarity with the[3], refused plaintiff's accommodation request, suggesting a pattern and practice of routine violations of the ADA given almost half of his duties involve depriving disabled persons of legal rights in guardianship—without providing reasonable accommodations for their disabilities that may avoid the need for drastic measures in guardianship. The lack of familiarity with the ADA necessarily reveals a pattern of discrimination because the persons protected by the ADA's comprehensive coverage are the same persons stripped of their rights and treated like chattel in guardianship.

## IV. **PROCEDURAL DUE PROCESS**

31. An application for temporary guardianship pursuant to Chapter 1251 mandates a sworn application for the appointment of a temporary guardian must be filed before the court appoints a temporary guardian with the name and address of the proposed guardian, the danger to the person or property deemed imminent[4], the

---

[3] Wood's failure to train court appointees and to ensure he complies with federal mandates for reasonable accommodation in the ADA impose liability on Harris County, even if Wood cannot be held liable for damages, which is disputed by virtue of Tex. Est. Code 1201.003. *See e.g., Stump vs. Sparkmanv, 435 U.S. 349, 356 (1978); Pulliam vs. Allen 466 U.S. 522 (1984)*

[4] Pursuant to TEX. EST. CODE § 1251.003(b)(2, the application must state the

type of appointment needed, facts and allegations to support, the identity of the applicant, confirming the private professional guardian is certified. Tex. Est. Code 1251.006. The temporary guardian proposed cannot be appointed without being physically present, which is why Goldberg mislead this Court falsely stating she was in Wood's court September 19, 2017 by chance and was appointed. Tex. Est. Code. 1251.009. The transcript proved she was on the phone. (33-15).

32.     **The Court may not appoint a temporary guardian in the absence of imminent danger,** which did not exist in this case until Michele Goldberg took over and delegated her purported authority to Donald, who admitted having untreated mental health and financial problems.

## V.  <u>SHAM PROCEEDINGS TO CIRCUMVENT MANDATES</u>

33.     Defendants used threats of police, APS and the D.A. to intimidate and threaten Latham under color of state law with knowingly trumped up accusations. They now believe that a pending investigation (caused by their false reporting to APS or law enforcement) is sufficient to disqualify Latham from appointment as personal representative of Muriel Mintz' estate when they are the malfeasants who initiated the fraudulent reports.

---

danger to the person or property alleged to be imminent, they do not (Dkt 1-2 and 1-31), (Dkt 35-6).

34.     Wood admitted to conducting virtually no jury trials in his courtroom during the past 13 years and stated there would be no jury trials until after he retires in 18+ months, demonstrating his complete lack of regard for the rights of the disabled involuntarily stripped of their rights in guardianship, stating:

> THE COURT: "*I've got to appoint a guardian now because there are not going to be any juries, perhaps, in this Court until I retire in 18 months.*" (Dkt. 35-15).

35.     Wood and Kelly's cryptic exchange regarding the temporary vs. permanent intent of his purported guardianship order reveals the entire production was a sham designed to give the appearance of legitimacy where there was none. The exchange revealed no trial would ever be held because the guardianship was permanent and merely labeled temporary. Sec. 1055.052. TRIAL BY JURY. A party in a contested guardianship proceeding is entitled to a jury trial on request. The exchange between Kelly and Wood and Wood with Pitre are key examples of cryptic communications designed to conceal material facts of the true agenda from others. The act of calling it a temporary guardianship renders the burden of proof of incapacity much less onerous, requiring substantial evidence of incapacity and need for a guardian as opposed to the high standard, clear and convincing evidence . Wood conveyed the message to Kelly that the guardianship would be called temporary but was effectively permanent.

36.    Wood initially encouraged the parties to go out in the hallway and pick someone to serve other than Latham or Mintz, because the application for third party guardianship was not served upon Muriel by constable or sheriff (nor is there any proof that Donald Mintz' initial abandoned pleading was served either).

37.    The conspiracy is evident in the tacit agreement to terminate Muriel's life on hospice when the Estates Code mandates guardians protect and provides no legal authority to end a person's life in hospice without court intervention. On January 2, 2018, Goldberg told this Court that she could not confirm whether Muriel Mintz' body was buried in Muriel's casket and had no idea who identified the body as Muriel Mintz if anyone did. As Muriel's purported guardian, paying for Family Tree Hospice's services, it is inconceivable that Goldberg does not already know the sitter she hired was at the bedside the moment Muriel died.

38.    Rather than serving as judge, jury and executioner, Goldberg should have sought a court order if doctors truly deemed Muriel terminal. Her problem is Muriel was not terminal, a fact that was evident from the moment the trust lawsuit (mandating Muriel be dead as a condition precedent to removal of a trustee) was filed. Five days later, Muriel suffered an alleged fall that resulted in her death—a story that wasn't true but used to begin morphine which causes swallowing problems and permitted the starvation and dehydration to begin. In *Cruzan vs. Director Mo.*

*Health Dept, 497 U.S. 261 (1990)* The High Court held that a high standard of proof such as clear and convincing evidence was appropriate regarding a person's intention to refuse life sustaining treatments including food and water and agreed that a state should not place a value on the "perceived quality" of a person's life, as Goldberg did when she deemed Muriel's worthless and opted for death. The Supreme Court has held that convicted felons in prison have a 14th Amendment right to refuse psychotropic drugs; yet, these same dangerous lethal drugs are forced upon seniors in guardianship without regard to their wishes—or liberty. *Washington v. Harper* (1990), 494 U.S. 210.

## V. REQUEST TO DENY DISMISSAL

**39.**     Defendants' refusal to submit to depositions and failure to provide all documents in response to subpoenas reveals a pattern of deception and deliberate concealment of evidence of Defendants' conspiracy. Defendants violated the Court's January 10, 2018 order permitting discovery and depositions to proceed. Defendants' persistent obstruction has prejudiced Plaintiffs' ability to identify all necessary parties and prepare a final complaint for trial yet ask the court to reward their lack of clean hands and dismiss Plaintiffs' case.

Respectfully Submitted,

**SCHWAGER LAW FIRM**

*Candice Schwager*

Candice L Schwager

Texas Bar No. 24005603

 Federal I.D. 30810

1417 Ramada Drive

Houston Texas 77062

Tel: 832.315.8489

Fax: 713.456.2453

candiceschwager@icloud.com

 http://www.schwagerfirm.com

**ATTORNEY FOR BARBARA LATHAM AND ESTELLE NELSON**


## CERTIFICATE OF SERVICE

I, Candice Schwager, hereby certify that on the 4TH OF APRIL, 2018, all parties were served as mandated by federal rules and local rules and the Defendant Judge Mike Wood's counsel indicated no opposition to Plaintiffs' motion for leave to file beyond the deadline.

*Candice Schwager*

Candice L Schwager