**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| BARBARA LATHAM, and ESTELLE NELSON, Individually and as Heir to Estate of MURIEL MINTZ, deceased §§§§§ VS. §§ JUDGE MIKE WOOD, Individually and Official Capacity as Statutory Probate Judge MICHELE GOLDBERG Individually & Officially, HARRIS COUNTY, TERESA PITRE, Individually & Officially, DONALD MINTZ, HOUSTON HOSPICE STACY KELLY, ST. LUKE'S EPISCOPAL HOSPITAL, THUY TRIN, DOES 1-100 § | CASE NO. 4-16-CV-03875 HON. VANESSA GILMORE |

**OPPOSED MOTION FOR LEAVE TO FILE**

**FOURTH AMENDED COMPLAINT & ALTER JUDGMENT**

**PURSUANT TO FRCP 15, 59 & 60**

1.  PLAINTIFFS, BARBARA LATHAM AND ESTELLE NELSON, Individually and as Heirs of the Estate of MURIEL MINTZ, deceased file this OPPOSED MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT & ALTER JUDGMENT PURSUANT TO FRCP 15, 59 AND 60, because justice demands an answer to the question:

**"WHAT HAPPENED TO MURIEL MINTZ?"**

**RES IPSA LOQUITOR DEMANDS GOLDBERG ANSWER**

1

1.     On January 2, 2018, the PARTIES appeared for PLAINTIFFS' injunction, filed before MURIEL MINTZ' death, alerting the Court that relief was no longer possible as a result of MINTZ' death on Christmas Eve.

2.     PLAINTIFFS were deprived of access to their mother, medical records and information on her prognosis, and treating professionals in a complete black out by Michele Goldberg, the alleged temporary guardian of MURIEL MINTZ

3.     PLAINTIFFS sought basic information from Goldberg while MURIEL was hospitalized for an alleged fall reported December 5, 2017 and received only sporadic bits and pieces from Goldberg, as she was secretly planning MURIEL'S death with DONALD MINTZ.

4.     MURIEL MINTZ was not ill when LATHAM dropped her at GOLDBERG'S office November 24, 2017,

5.     DEFENDANTS contend that MURIEL sustained a fracture to her thoracic spine December 2, 2017 which the Medical Examiner says caused her death via blunt force trauma.

6.     ESTELLE NELSON is a geriatric home health registered nurse with over 30 years of experience whom was allowed 2 days of access to her mother before being banned without explanation

7. BARBARA LATHAM is a retired 30+ year R.N. in psychiatry whom was caring for her MURIEL in her home 24/7 from March – 11/24/17 when she became exhausted by DEFENDANTS' 8 month stream of harassment, and coercion to surrender MURIEL MINTZ to GOLDBERG

8. GOLDBERG was appointed temporary guardian in a void proceeding over which the Court never had jurisdiction for lack of notice. Wood appointed MICHELE GOLDBERG in her absence in violation of the Code.

9. GOLDBERG visited MURIEL in OCTOBER, 2017 reporting that she was well cared-for in LATHAM'S neat, tidy home and happy.

10. DEFENDANTS repeatedly sought to obtain jurisdiction over MURIEL and her estate by fraud, but failed to serve MURIEL prior to death.

11. DEFENDANTS filed a trust lawsuit 11/27/17 to remove LATHAM. The trust required MURIEL to be dead to remove a trustee. She was in less than 30 days.

12. GOLDBERG'S obstruction was unreasonable given she was could not give informed consent knowing nothing about MURIEL.

13. Houston Hospice records indicate Donald Mintz suffers from untreated mental illness and financial problems,

14. St. Luke's records reveal Goldberg prohibited PLAINTIFFS from having access to any information, suggested they be removed and banned, while purporting to make DONALD her agent for purposes of MURIEL'S medical decisions.

15. LATHAM'S medical power of attorney was never expressly revoked as mandated by 1251.

16. GOLDBERG and DONALD opted for hospice and chemically restrained MURIEL who was shouting to leave ST LUKE'S.

17. MURIEL refused to sign for hospice with records stating "altered mental status," and DONALD signing over her objections.

18. MURIEL's death appears to have been illegally hastened by a 72 hour death cocktail known to cause "terminal sedation" Morphine, Haldol, Lorazepam.

19. LATHAM AND NELSON examined their mother in hospice December 20, 2017 and determined she did not have "aspiration pneumonia" as GOLDBERG contended (something that would qualify for hospice in combination with a bedsore MURIEL had).

20. Goldberg used private ambulances to conceal MURIEL'S admissions and discharges and create a false narrative that implies Morphine was necessary due to pain. MURIEL fractured her spine in 2016 and did not require morphine. No 2017

x-rays were taken of the thoracic spine, making it impossible to diagnose new fractures as a cause of death.

21. Plaintiffs believe this fabrication was used to start morphine which is known to cause swallowing problems and aspiration pneumonia, allowing MURIEL to be starved and dehydrated

22. On 12/25/17, Goldberg notified Plaintiffs' counsel that MURIEL passed away Christmas Eve.

23. Golberg was asked to cease interfering with Latham's authority over the funeral and remains and GOLDBERG refused.

24. On January 2, 2018, the Court asked Goldberg who identified the body and whether she could confirm MURIEL was buried in the site designated for her remains. *Res Ipsa Loquitor* demands Michele Goldberg answer this question. It's a rule of evidence allowing fact finder to find negligence just by fact it happened because: *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). 1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and 2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Id*.

25. Plaintiffs have a right to know What Happened to Muriel Mintz?

26. The Court granted PLAINTIFFS' motion to perpetuate testimony 1/10/18, asked for deposition dates. No Defendant agreed to submit to deposition, violating the Court's order and questioning the Court's authority.[1]

27. Medical providers delayed, resisted complying with a federal subpoena, or withheld critical documents that would have been in the file. Goldberg testified in Brazoria County regarding venue and could not remember anything, saying she did not have her file.

28. PLAINTIFFS' counsel was in the process of amending the 4th Complaint when the Court abruptly dismissed claims against MINTZ, KELLY, GOLDBERG AND WOOD

29. WOOD AND GOLDBERG'S claims were dismissed with prejudice and without explanation.

30. PLAINTIFFS' counsel was attempting to amend and had every expectation that the Court would compel DEFENDANTS to submit to depositions as ordered 1/10/18 – anticipating the issue would be resolved at the 4/6/18 conference

---

[1] See email from M. Quattlebaum, counsel for Goldberg, dated 2/22/18 and email 5th request for deposition dates to Jason Ostrom, counsel for Stacy Kelly and Donald Mintz, wherein Ostrom agrees to produce Kelly or Mintz only as fact witnesses only, stating 'Judge Gilmore doesn't tell me if I can file a 12b motion. Federal rules of civil procedure prescribe my clients' procedural rights.'; Ms. Quattlebaum stating "It is premature in my opinion to conduct depositions before I have had an answered on behalf of my client.

31.   PLAINTIFF learned of the dismissal the morning of 4/6/18.

32.   GOLDBERG had no authority to interfere with the disposition of MURIEL MINTZ' body after death without a court order.[2]

33.   After maliciously interfering with LATHAM'S right to bury her mother, GOLDBERG cannot confirm the disposition of her remains:

January 2, 2018:

> *THE COURT: So, nobody saw the body then?*
> *MS. GOLDBERG: Nobody saw the body.*
> *THE COURT: Other than the funeral home.*
> *MS. GOLDBERG: She was not embalmed. That's Jewish law. Because there was no viewing, she was not embalmed.*
> *HE COURT: ho gets to see the body to identify the right person that has been given to the funeral home and make sure it's and put in the casket?*
> *MS. GOLDBERG: I'm assuming it was the medical Examiner, hospital personnel. That's a good question. I don't know exactly. I'm assuming hospital personnel. She is identified in the hospital and at Hospice with a band and other means of identification that they use. The body Went*

---

[2] "Before the guardianship of a person or estate of a ward is closed on the death of a ward, the guardian, subject to the approval of the court, may make all funeral arrangements, pay for the funeral expenses out of the estate of the deceased ward, and pay all other debts out of the estate." Guardianship of Eva Manning Bayne, 171 S.W.3d 232 (Tex App – Dallas 2005). This is likely because guardianship ends at death, and the guardian is only allowed to account.

7

*directly --it was Christmas Eve. They started calling me almost at midnight. I asked, Well, what are you doing with the body? They said the medical examiner is on the way.*

*THE COURT: Okay. So, you are saying somebody from Hospice would have identified her body to the medical examiner?*

*S. GOLDBERG: That's a good question, Your Honor*

*THE COURT: We don't know the answer to that question?*

*MS. GOLDBERG: That's a good question. I will find out.*

*THE COURT: We don't know if that was her put in the casket or not at this point?*

*MS. GOLDBERG: Lord have mercy.*

*THE COURT: That's a real question. I'm asking.*

*MS. GOLDBERG: That is a very good question.*

*THE COURT: We don't know then?*

*MS. GOLDBERG: It's not confirmed.*

*THE COURT: Pardon me?*

*MS. GOLDBERG: I don't know.*

*THE COURT: The only people that would have seen her deceased would have been the people at Hospice and the Medical examiner, presumably?*

*MS. GOLDBERG: I don't know if the son or granddaughter saw her. I'll see if I can find out.*

*THE COURT: Okay. That is literally just a question. I'm just curious.*

> *S. GOLDBERG: No. It's a good question. If it happens again, I'll surely ask*

## LEGAL AUTHORITY

34. Rule 15 allows for liberal pleading amendments, especially when justice requires it. Rule 15 states:

> "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." Fed. R.Civ. P. 15(a)(2).

35. *See Federal Rule of Civil Procedure 15(a)*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts permit the amendment of pleadings for virtually any purpose, including adding claims, altering legal theories, or requesting different or additional relief. The U.S. Supreme Court held that in the absence of undue delay, dilatory motive, or bad faith, a party should be given leave to freely amend. Foman vs. Davis, 371 U.S. 178, 182 (1962).

36. The courts consider the following factors:

   a. Prejudice to defendant;

9

    b. Bad-faith motive on part of plaintiff, e.g., use of motion to postpone trial date, impose additional expense on opposing party, or gain additional leverage in settlement negotiations;
    c. Undue delay or dilatory conduct by plaintiff;
    d. Futility of proposed amendment;
    e. Impact on judicial economy, judicial resources and court's ability to manage cases and control its dockets.
    f. Preference for applications of procedural rules that permit courts to render decisions on merits
    g. \Avoiding harm to the plaintiff that would be caused by denying leave to amend.

37. PLAINTIFF filed a MOTION TO RECONSIDER under Rule 60 asking the Court to vacate the ORDERS TO DISMISS WOOD AND GOLDBERG WITH PREJUDICE as well as dismissing MINTZ AND KELLY without prejudice

38. Plaintiffs' counsel experienced a flare up of fibromyalgia which slowed her progress completing responses to Motions to Dismiss simultaneously with the 4th Amended Complaint. Defendants' violations of this Court's discovery and deposition order, necessarily mandates that their unclean hands and persistent obstruction bar dismissal of this lawsuit in their favor until they comply with this Court's January 10. 2018 order.

39. The Seventh Circuit held that in Runnion, simultaneous dismissal of the complaint and entry of judgment constituted valid "extraordinary circumstances" under Rules 59 and 60 warranting setting aside the judgment and considering

whether an amended complaint should be allowed under Rule 15(a)(2)'s "freely given when justice so requires" standard.

40. *In U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014), the Fifth Circuit did state that "following a dismissal with prejudice, the considerations for the Rule 59(e) motion are governed by Federal Rule of Civil Procedure 15(a)." Id. at 367; Clark v. United States, 764 F.3d 653 (6th Cir. 2014)( "post judgment motions to amend, the Rule 15 and Rule 59 inquiries turn on the same factors.")( Id. at 661.

41. Absent leave to amend via Plaintiffs' 4th Amended Complaint, Plaintiffs are deprived of a remedy by the ruling dismissing federal and state claims against Wood and Goldberg with prejudice.

42. Tex. Est. Code 1201.003 expressly makes the judge liable on his bond for gross neglect, a fact question.

43. Unless this order is vacated Plaintiffs and Muriel's rights are illusory because there is no remedy.

44. Judge Wood refuses to recuse himself and Donald Mintz is actively contesting Latham's appointment as independent executrix with only $10,000 in the estate. There is no remedy where the judge responsible for the harm is the same judge who decides whom to appoint as executor of the estate—given the power to sue.

45. Plaintiffs have standing to assert 42 USC 1983 claims as pled through Texas Wrongful Death and Survival Statute 71.001-71.004 because they filed within 90 days of death. If the Court dismisses this case, they could lose standing.

46. The torts committed against MURIEL will not be redressed absent PLAINTIFFS lawsuit.

47. Muriel died based on the vulnerability of having disabilities. She wanted to leave the hospital by shouting as she begged Estelle to take her with her but was chemically restrained instead.

48. WHAT HAPPENED TO MURIEL?

    Respectfully,

*Candice Schwager*
_____
Candice Schwager
Schwager Firm
1417 Ramada Dr
Tel 832.315.8489
Fax: 713.456.2453
Candiceschwager@icloud.com
**ATTORNEY FOR LATHAM AND NELSON IND. AND HEIRS.**

## **CERTIFICATE OF CONFERENCE**

I, Candice Schwager, hereby certify that I conferenced with all of record regarding this motion and said counsel are opposed on the 11th day of April, 2018.

*Candice Schwager*
_____
Candice Schwager

## **CERTIFICATE OF SERVICE**

I Candice Schwager hereby certify that I served all counsel of record this 11th day of April, 2018 by electronic filing in Pacer.

*Candice Schwager*
_____
Candice Schwager